## BONAHOON ET AL. *v.* STATE OF INDIANA.*

[No. 26,039. Filed December 10, 1931.]

* Reported and annotated 79 A. L. R. 453. See note VII Ind. Law Jour. 385.

52

*Edward B. Henslee* and *Smith & Parrish,* for appellants.

*James M. Ogden,* Attorney-General, and *Earl B. Stroup,* Deputy Attorney-General, for the State.

MARTIN, J.—Each appellant was prosecuted by an affidavit which charged that he "did . . . in a rude, insolent and angry manner, unlawfully touch, beat and strike the person of one George Dannells"—a charge of assault and battery in the language of the statute, §354, ch. 169, Acts 1905, §2419 Burns 1926. The causes were consolidated for trial by a jury, which returned a verdict finding the defendants "guilty of assault and battery as charged in the affidavit and that they be imprisoned in the county jail for a period of 30 days and that they be fined in the sum of $50." Judgment was rendered upon the verdict, from which this appeal was taken.

From the recital of the State's evidence, upon which the verdict was based, as set out in appellants' brief, it appears that George Dannells was arrested by motorcycle police officers at 11 p. m. February 16, 1931 and taken to the Ft. Wayne police station upon suspicion. (Some gasoline had previously been stolen from a garage in a yard where he was found prowling.) The appellants, who were plain-clothes police officers, took Dannells to the detectives' room, about 4 by 5 feet in size, on the third floor of the police station, and gave him what is sometimes called the "third degree." At the time, no warrant had been issued for Dannells' arrest and no charge of crime had formally been placed against him. They questioned him, accused him of stealing gasoline and of lying, called him vile names, tried to make him confess that he had stolen gasoline and threatened him with bodily injury if he did not confess. McGary, with his fists, hit Dannells in both eyes, cut the top of his head, and beat him with a rubber hose on the head and ears until he (McGary) was panting and the sweat ran down on his face. Bonahoon then took the hose and continued to beat Dannells with it. A police officer testified that he overheard the con-

versation which went on for half an hour in the detectives' room, that both McGary and Bonahoon said "We will beat your head off if you don't tell the truth" and that Dannells said "Please don't hit me any more—I did not steal gasoline." Four other police officers testified that Dannells had no abrasions or welts on him before going to the detectives' room, but that when he was brought out, about 1 a. m., and locked up in a cell that he had a cut on his ear that was bleeding, a scar on his nose, marks on his head, his right cheek bone swollen, his face full of welts and one eye red and almost closed. The police surgeon who examined him next day told of bruises about the right eye, abrasions on the right ear, the cheek bones swollen, black and blue, red and swollen welts on his left side and black and blue marks on his back.

Officer McGary testifying in his own behalf did not deny hitting Dannells with his fists and kicking him, but claimed that he did it in "self defense" and "for my own protection." Both McGary and Bonahoon, who weighed 180 and 230 pounds respectively, had their hands dressed at a hospital after conducting their investigation of the prisoner. McGary testified "I sprained my thumb hitting him," but Bonahoon testified "I tore my thumb nail off" in getting off of a chair. A state senator, an ex-mayor and some ex-policemen testified that "the reputations of Bonahoon and McGary for peace and quietude are good."

The appellants, at the close of the State's case, and again after both the State and the defense had rested, moved the court to instruct the jury to return a verdict in their favor finding them not guilty. Error assigned upon the action of the court in overruling each of these motions presents the appellants' only contention for reversal of the judgment. This contention is "that they were prosecuted under the wrong section of the statute

and for the wrong offense . . .; that the evidence shows . . . they should have been prosecuted under §2420 Burns 1926 which defines the offense of using force to obtain a confession from a prisoner, instead of §2419 which defines the offense of assault and battery . . . that, while prior to the creation of the new offense as defined in §2420 . . ., appellants, under the evidence, may have been guilty of the crime of assault and battery and properly prosecuted under §2419, since the creation of the new offense, it was the duty of the state to prosecute them under §2420, for the reason that, by its enactment, a new, specific, separate and distinct offense was created for the punishment of persons or peace officers undertaking the use of force to obtain a confession from a prisoner.''

The evidence adduced at the trial was amply sufficient to sustain the verdict on the charge of assault and battery under §2419 Burns 1926, and it appears to us, although we are not here called upon to decide, that such evidence would have been sufficient to sustain a verdict of guilty on a charge of the crime defined by §2420 Burns 1926, had the appellants been prosecuted under that section of the statute.

Police officers are constantly confronted with difficult and trying duties in handling prisoners, many of whom are hardened and resourceful, and the courts will go far in the support of police officers who act in good faith in a legitimate effort to protect society. They may exercise reasonable means for the safe keeping of prisoners, to preserve discipline and to secure obedience to reasonable orders. The securing of voluntary confessions from guilty criminals is to be desired, and the reasonable examination of prisoners charged with crime or suspected of crime is and should be allowed in the interest of the public welfare and safety. Such examination, however, should be kept

within proper bounds, and cruel and brutal methods should never be tolerated. See *State, ex rel., v. Clausmeier* (1900), 154 Ind. 599, 57 N. E. 541, 77 Am. St. 511, 50 L. R. A. 73. Confessions obtained or extorted by police officers through threats, fear, physical force or violence are useless because they are not admissible in evidence. (See cases cited under §522(1) Criminal Law in Decennial Digests.)

The law protects persons charged with crime from ill or unjust treatment at all times. Only reasonable and necessary force may be used in making an arrest, §§2157, 2159 Burns 1926; *Durham* v. *State* (1927), 199 Ind. 567, 159 N. E. 145; *Plummer* v. *State* (1893), 135 Ind. 308, 34 N. E. 968; "no person arrested, or confined in jail, shall be treated with unnecessary rigor," §15, Art. 1, Constitution, §67 Burns 1926; *Hall* v. *State* (1928), 199 Ind. 592, 600, 159 N. E. 420; and the restraint exercised over a prisoner in the courtroom can only be such as is necessary, in the exercise of the court's sound and enlightened discretion, to prevent his escape or the harming of others. *McPherson* v. *State* (1912), 178 Ind. 583, 99 N. E. 984; *Hall* v. *State, supra*. "While the law protects the police officer in the proper discharge of his duties, it must at the same time just as effectively protect the individual from the abuse of the police." *United States* v. *Pabalan* (1917), 37 Philippine 352, 354. The acts of the appellants as proved by the State in the case at bar were indefensible and in violation of the Constitution. The official position of the officers provides them no defense for an assault which the law prohibits.

The appellants here were tried and convicted only of the one simple offense, assault and battery, of which they were clearly guilty, all the essential elements of the offense having been proved by sufficient evidence to the satisfaction of the jury.

The fact that their acts may also have constituted a violation of §2420 Burns is no reason why they cannot be tried and convicted for assault and battery. "There are many acts that offend against more than one of our criminal statutes." *State* v. *Styner* (1900), 154 Ind. 131, 56 N. E. 98; *Pivak* v. *State* (1931), 202 Ind. 416, 175 N. E. 278, 74 A. L. R. 406, and the State is under no duty to prosecute a law violator under one statute rather than under another. Under such circumstances, the State has the right to determine under which statute it will proceed. *Fleming* v. *State* (1910), 174 Ind. 264, 91 N. E. 1085; *Palmer* v. *State* (1926), 197 Ind. 625, 633, 150 N. E. 917.

We do not know, and we do not have occasion to question, the reason why the State prosecuted these appellants under §2419 rather than under §2420. The latter section has to do with the infliction for the purpose of obtaining a confession, of physical violence, threats, etc., by "any person or peace officer having in charge or custody any person under arrest charged with the commission of a crime or an offense or the violation of any law," and it may be that the prosecuting attorney was doubtful, in the absence of a formal charge of crime by indictment or affidavit filed against the prisoner, whether violence inflicted upon him would be in violation of this section. (The Attorney-General, in his brief in this case, contends that appellants, not having been formally "charged with the commission of crime or the violation of any law," could not have been properly prosecuted under §2420. It is unnecessary in order to support the judgment below for the State to assume this position, which, as already indicated, we do not approve.)

Appellants say that the acts proved here may constitute assault and battery "generically," but that "specifically" they constitute the offense defined by §2420;

that, when a statute prescribes a "specific offense," the prosecution must be under that statute. To support this position they cite *Murray* v. *United States* (1896), 1 Ind. Terr. 28, 34, 35, 35 S. W. 240; *State* v. *Runyan* (1892), 130 Ind. 208, 29 N. E. 779; *Montgomery* v. *State* (1881), 80 Ind. 338, 41 Am. Rep. 815; *Jones* v. ·*State* (1877), 59 Ind. 229; *State* v. *Wingo* (1883), 89 Ind. 204. We do not consider that these cases, which are reviewed in a footnote,[1] lay down any rule of law with which the decision herein is in conflict.

Judgment affirmed.

---

*Note 1.* The two cases last cited, holding that there cannot be a conviction upon facts which constitute larceny when the charge is embezzlement, are not applicable here where the facts constitute all the elements necessary for a conviction under either statute.

*Montgomery* v. *State, supra,* held that a prosecution was properly brought under §1923 R. S. 1881 where death resulted from an unlawful attempt to produce an abortion, that the offense was none the less homicide because brought under such statute and that therefore a dying declaration was admissible. The dicta that "the State was bound to prosecute under the statute specifically defining the offense" cannot be accepted in its literal interpretation.

In *State* v. *Runyan, supra,* it was held that one who made a false affidavit to his claim against a township for sheep killed by dogs which was contrary to Elliott's Sup., §450, could not be prosecuted for perjury under the general statute, §2006 R. S. 1881.

In *Murray* v. *United States, supra,* a prosecution for larceny of an unbranded bull over a year old, the general larceny statute of the United States in force in Indian Territory provided that "every person who . . . takes and carries away with intent to steal or purloin, the personal goods of another" shall be fined or imprisoned, while the special Arkansas statute, also then in force in Indian Territory, provided that "owners of cattle, . . . which run at large in the range or woods, shall designate such animals, if over twelve months old, by brands or ear marks; otherwise, if taken or converted to the use of any other person, such person shall not be deemed guilty of larceny, but the owner may have his action for the value of such unmarked or unbranded animal."