SUTER *v.* STATE OF INDIANA

[*No. 28,548. Filed November 7, 1949.*]

*Wilbur F. Dassel,* of Evansville, for appellant.

*J. Emmett McManamon,* Attorney General, *Charles F. O'Connor* and *Merl M. Wall,* Deputy Attorneys General, for appellee.

GILKISON, C. J.—Appellant was charged in the trial court, by affidavit, which omitting caption, signature, verification, approval and endorsements, is as follows:

> "Marvin Huff being duly sworn upon his oath says that Robert Allen Suter on or about the 1st day of May, A.D., 1948, at said County and State as affiant verily believes did then and there, unlawfully, feloniously and burglariously break and enter into the dwelling house of Neal Sauer, 1325 E. Gum Street in the City of Evansville, in which the said Neal Saur then lived, with the intent to unlawfully take, steal and carry away the goods, chattels and personal property of the said Neal Sauer.

"Then and there being contrary to the form of the Statute, in such cases made and provided, and against the peace and dignity of the State of Indiana."

The date in the affidavit was afterward changed to March 29, 1948, on motion of the state and without objection.

Appellant moved to quash the affidavit for the reasons, (1) The facts stated in the affidavit do not constitute a public offense. (2) The affidavit does not state the offense with sufficient certainty. This motion was overruled, and error is assigned thereon.

Appellant filed and presented his verified motion to suppress evidence obtained by an alleged unlawful search of appellant's home, which motion was sustained by the court.

After plea of not guilty, the cause was tried by jury, resulting in a finding of guilty as charged.

Appellant's motion for new trial, setting forth one hundred fifty-four causes, was overruled, and judgment was rendered on the verdict from which this appeal is taken. Error is assigned on the ruling on the motion for new trial.

The statute defining the offense of first degree burglary and providing the penalty therefor is as follows:

"Whoever breaks and enters into any dwelling-house or other place of human habitation with the intent to commit any felony therein, or to do any act of violence or injury to any human being, shall be guilty of burglary in the first degree, and on conviction thereof shall be imprisoned not less than ten [10] years nor more than twenty [20] years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

Burns' 1942 Replacement, § 10-701 (a).

We quite agree with appellant that the affidavit must charge an unlawful breaking and entry with intent unlawfully to take, steal and carry away the goods, chattels and personal property of the owner or occupant of the property described in the affidavit. We think the affidavit in question complies with this requirement, concisely and without surplusage. In a charge of first degree burglary with intent to commit a larceny, the crime consists in breaking and entering into the dwelling house or other place of human habitation with intent to commit any felony therein, or do any act of violence or injury to any human being. The crime is complete without the actual commission of the felony intended, and it is not necessary to state the kind or value of the goods intended to be stolen. *Hunter* v. *State* (1867), 29 Ind. 80, 82; *Short* v. *State* (1878), 63 Ind. 376, 379; *Farley* v. *State* (1890), 127 Ind. 419, 420, 26 N. E. 898; *Barnhart* v. *State* (1899), 154 Ind. 177, 178, 56 N. E. 212; *Pacelli* v. *State* (1929), 201 Ind. 455, 458, 166 N. E. 649. See Anno. 113 A. L. R. 1270.

There was no error in overruling the motion to quash the affidavit.

Appellant objected to much of the evidence introduced in the case against him by the state. It would extend this opinion greatly to attempt to determine each objection properly presented, and the appeal may be determined without the necessity of doing so. Appellant objected to the introduction in evidence of state's Exhibit No. 1 which was the typewritten purported confession by appellant. This objection was overruled and the exhibit was admitted in evidence. Twenty-one reasons are assigned for this objection, among which stated in our own words, we find the following: That it was given under inducement and under the influence of fear produced by threats and intimidation and after

the police held the defendant in custody without warrant for a period of more than two days in a small cell, or room under almost constant questioning and without necessary food, rest or sleep. That during the time appellant was so held by the police, they denied appellant's request to consult with his father, wife and with his counsel, and refused to permit his counsel to consult with him.

The court heard evidence on this and other objections in the absence of the jury. The undisputed evidence so heard shows that appellant and his wife were driving on the streets of Evansville, and were stopped by Chief of Detectives, George Hansch and several other police officers. They asked his name, searched his car, and told appellant to get in his car and go down to the police station, which he did—the police following him. The police station is about four miles from where they stopped him. They took him to a little back room leaving his wife outside somewhere and he did not see her again. They made him take everything out of his pockets and then started questioning and accusing him. Chief Hansch said he was going to lock up appellant's wife. More than once Chief Hansch said to appellant: "What are you trying to do, take your wife to the penitentiary with you? That is exactly what you are going to do." "How many jobs did she pull with you?" They put handcuffs on appellant and took him out to his house and searched it several times on Saturday night, Sunday, Sunday night and Monday. Appellant asked for his attorney, Jimmie Lopp, Saturday night as soon as he was brought to headquarters. Often he asked the police to call his father or Jimmie Lopp, his attorney, and he frequently asked the police to permit him to call his attorney and his father. The police always answered him "later on" or "you will have to

see Chief Hansch." But they never called either his father or his lawyer nor permitted appellant to do so. Late Saturday night they took him upstairs and locked him in a cell of solid steel, furnished with a cot and commode. There were no bed covers, no lights, no drinking water. Policemen came in and questioned him at intervals of fifteen to thirty minutes continuously during the night. They frequently told him to come clean and confess or they would charge his wife with crime. Each time they came they made him get up and stand at the bars and talk. Sunday morning they took appellant downstairs to a little room 3 ft. by 8 ft. beside Chief Hansch's. There were two or three officers in the room. They asked him several questions but he didn't answer and they again threatened to bring charges against his wife. Another officer said if he didn't answer these questions he'd get it out of him one way or another—then this officer took a blackjack out of his pocket and hit a filing cabinet with it making a loud noise.

The police took appellant back to see Chief Hansch and told him if "he'd come clean" they would turn his wife loose. They continued asking him questions—he had no dinner Sunday. They did not let him sleep or eat on Sunday or Sunday night. Monday morning they questioned him a while. They let him see his wife a few minutes and they told her to tell him "he'd better get this straightened out or they would put charges against her too."

Appellant had nothing to eat on Monday morning, and he again asked the policeman Huff to let him call his lawyer or his father and Huff told him that when they got "everything straightened out they'd get hold of them" for him. They continued questioning him about every fifteen minutes.

Policeman Huff promised if appellant would sign the statement they had written up they would turn his wife loose.

On Sunday morning, August 8, appellant's father was refused permission to see appellant or his wife. Appellant's father and attorney, James Lopp, went to the police station about eight o'clock Monday morning and asked to see appellant. Policeman Huff informed the attorney that they "were working on him and they'd not completed their statements" and refused the attorney's request. Attorney Lopp then insisted that he be allowed to see appellant, and the police refused. The police told the attorney they were holding the defendant without warrant for investigation. They refused to permit this attorney to see appellant's wife who was also locked up at the police station. Police told the attorney to return later that morning and he could see them. The attorney returned between 10:30 and 11:00 o'clock that morning and again asked to see appellant and was informed by the policeman, Huff, they had not completed their work, and he could not see appellant. The attorney then threatened to bring a habeas corpus action. The attorney begged the police to let appellant's father see him. The police then required appellant's father and his attorney to promise that they "would not advise him" and that they would merely say "hello" to him. The police then allowed appellant's father and lawyer to stand at the door of the small room next to the detective's office "merely for the purpose of viewing" appellant.

The attorney then noted the appellant "looked terrible, haggard, and from his facial expression he was just worn out physically."

No one from police headquarters ever called Attorney Lopp and advised him that appellant and his wife want-

ed to see him. He learned of that desire from appellant's father only.

The purported confession was signed by appellant sometime after 10:30 Monday morning, August 9, 1948, and at least forty hours after the inquisition began.

There is no record showing that any warrant for the arrest of appellant was ever issued or served. An appearance for him in the cause was entered by his attorneys on August 12, 1948, five days after his arrest and detention without warrant by the policemen.

The statute concerning the admissibility in evidence of confessions is as follows:

> "The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats or by intimidation or undue influence; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence."

Sec. 9-1607, Burns' 1942 Replacement.

Some of the fundamental rights of one who is accused of crime in Indiana are as follows:

> "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; *to be heard by himself and counsel;* to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." (Our italics.)

Art. 1, § 13, Constitution of Indiana.

The constitutional right of appellant to be heard by counsel contemplates his right to consult with counsel

at every stage of the proceedings. *Batchelor* v. *State* (1920), 189 Ind. 69, 76, 125 N. E. 773; *Kuhn* v. *State* (1944), 222 Ind. 179, 193—Dissent, Swaim, 52 N. E. 2d 491; *Bielich* v. *State* (1920), 189 Ind. 127, 132, 126 N. E. 220; *Howington* v. *State* (1925), 30 Okla. Criminal Rept. 243, 251. See Anno. 54 A. L. R. 1225; 23 A. L. R. 1382.

We think it must be conceded that appellant had a right to have counsel when he was arrested, particularly when he immediately requested it, and specified the counsel he desired and apparently was prepared himself to pay for the services which he requested. *Powell* v. *Alabama* (1932), 287 U. S. 45, 53, 77 L. Ed. 158, 162; *Batchelor* v. *State* (1920), 189 Ind. 69, 76, *supra*. When his counsel called and asked to consult with him on Monday morning following his arrest, it was the duty of the police detaining him to grant the request and arrange for their confidential consultation. These refusals by the police were errors which must be charged to the state.

Until his incriminating statements were secured under the conditions aforestated, appellant was a prisoner in the exclusive control of the prosecuting authorities. He was intermittently questioned night and day, and frequently driven from the police station to his home and back, handcuffed, and his home was wrongfully searched over and over again in his presence with a view of eliciting disclosures incriminating him, and thus to break down his resistance to the incessant questioning.

"Arrest is the taking of a person into custody, that he may be held to answer for a public offense." Section 9-1004, Burns' 1942 Replacement. "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the

custody of the officer, but the defendant shall not be subject to any more restraint than is necessary for his arrest and detention." Section 9-1005, Burns' 1942 Replacement. If he has a warrant "the officer must inform the defendant that he acts under the authority of a warrant, and must show the warrant if required." Section 9-1006, Burns' 1942 Replacement. "But mere suspicion does not authorize the arrest of a person, even on the charge of having committed a felony." Ewbanks, *Indiana Criminal Law*, § 247, pp. 150, 151; *Hughes* v. *State* (1921), 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639; *Edwards* v. *State* (1926), 198 Ind. 170, 173, 152 N. E. 721; *Doncaster* v. *State* (1926), 197 Ind. 635, 151 N. E. 724.

When a peace officer arrests one without a warrant because he has reasonable or probable cause to believe that a felony has been committed, the power to detain the person so arrested and to restrain him of his liberty, is not a matter within the discretion of the officer making the arrest. Such officer cannot legally hold the person arrested in custody for a longer period of time than is reasonably necessary, under all the circumstances of the case, to obtain a proper warrant or order for his further detention. § 9-1024, Burns' 1942 Replacement; § 49-2802, Burns' 1933. "If the person arrested is detained or held by the officer for a longer period of time than is required under the circumstances, without such warrant or authority, he will have a cause of action for false imprisonment against the officer and all others by whom he has been unlawfully detained or held." The arresting officer "cannot justify his action in holding or detaining the prisoner for an unreasonable time before obtaining a warrant, upon the ground that such delay was necessary in order to investigate the case and procure evidence against

the accused," or to extort a confession. Ewbanks, *Indiana Criminal Law*, § 249, p. 152 (2d Ed.) ; *Harness* v. *Steele* (1902), 159 Ind. 286, 292, 296, 64 N. E. 875; *Watts* v. *Indiana* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801. Under all the circumstances as shown in this case we are convinced that appellant's confession was a product of the sustained and unlawful pressure of the police. It did not issue from appellant's free choice. *Watts* v. *Indiana* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801, *supra; Johnson* v. *State* (1948), 226 Ind. 179, 78 N. E. 2d 158, 160; *Dearing* v. *State* (1948), 226 Ind. 273, 79 N. E. 2d 535, 537.

It has long been the rule in Indiana that "the law protects persons charged with crime from ill or unjust treatment, and cruel and brutal methods should never be tolerated." *Mack* v. *State* (1932), 203 Ind. 355, 372, 180 N. E. 279.

Since 1911, it has been the statutory law of Indiana that,

> "It shall be unlawful for any person or peace officer having in charge or custody any person under arrest charged with the commission of a crime or an offense or the violation of any law, . . . to inflict upon the person so held in custody any physical violence, or threaten to inflict personal violence or injury *or deprive him of necessary food or sleep* for the purpose of extorting from said person a confession that he, . . . was guilty of violation of some state or municipal law." (Our italics.) § 10-404, Burns' 1942 Replacement; Acts of 1911, ch. 4, § 1, p. 6.

Confessions obtained or extorted by police officers in violation of this statute are useless, because they are not admissible in evidence. *Bonahoon* v. *State* (1931), 203 Ind. 51, 56, 178 N. E. 570, 79 A. L. R. 453, 456. See Anno. 79 A. L. R. 457; *Mack* v.

*State* (1933), 203 Ind. 355, 372, *supra; Johnson* v. *State* (1948), 226 Ind. 179, 78 N. E. 2d 158, 160, *supra.*

This statute applies with equal force whether formal charges have been filed, or the arrested person is being held for investigation. *Bonahoon* v. *State* (1931), 203 Ind. 51, 56, *supra.*

The Indiana Constitution provides:

"No person arrested, or confined in jail, shall be treated with unnecessary rigor."
Art. 1, § 15, Indiana Constitution.

This provision applies with equal force to any place where the arresting officers may cause a defendant to be confined. It likewise applies to the period of detention prior to the filing of the affidavit charging the offense and the issuance and service of a warrant thereon. *Bonahoon* v. *State* (1931), 203 Ind. 51, 56, *supra.* For the reasons given, overruling appellant's objection to the admission of the confession in evidence is error for which the cause must be reversed.

Since other alleged errors properly presented may not occur in a retrial of the cause, we shall not extend this opinion by considering them.

Judgment reversed with instructions to sustain appellant's motion for new trial.

The clerk of this court will issue a proper order to the Superintendent of the Indiana Reformatory for the return of appellant to the Sheriff of Vanderburgh County.

Young, J., concurs in result.

NOTE.—Reported in 88 N. E. 2d 386.