WALLACE *v.* STATE OF INDIANA.

[No. 29,130. Filed June 19, 1956.]

*Hunter J. Von Leer,* and *Jack H. Mankin,* of Terre Haute, for appellant.

*Edwin K. Steers*, Attorney General, and *Owen S. Boling*, Deputy Attorney General, for appellee.

LANDIS, C. J.—Appellant was charged by an indictment in two counts with the crimes of first degree murder (count 1) and murder in the perpetration of a robbery (count 2). A change of venue was taken to Vermillion County where appellant was convicted of manslaughter under the first count. The court directed a verdict for appellant under the second count of the indictment.

Appellant appeals from the judgment of conviction and has assigned as error the overruling of the motion for a new trial. Appellant's motion for new trial sets up numerous specifications of alleged error, including the introduction into evidence over appellant's objection of State's Exhibits 13, 14 and 19, purporting to be written confessions of appellant. Appellant contends the confessions were taken from him by police officers under fear produced by threats, intimidation and undue influence, and after appellant had been violently beaten, given the third degree, deprived of rest, and tortured in mind and body, in violation of his legal and constitutional rights.

The facts pertinent to a consideration of this case are as follows: Appellant was convicted of manslaughter growing out of the alleged killing of one Vincent Broyles on January 15, 1952, in Vigo County, Indiana. Appellant had been employed in a tavern where decedent, Broyles, was last seen the night before his body was found. Appellant was picked up several times by local police officers and questioned, and in February 1952 submitted to a lie detector test at State Police Headquarters, Stout Field, Indianapolis, after which he was released. Almost a year after decedent's death, to-wit, on January 12, 1953, appellant was taken

from his bed at home at about 7:30 A.M. by two local police detectives, Seward and Roach, and was driven to the city hall where he was photographed and fingerprinted; he was in the constant custody of such officers until approximately 6:00 A.M. the following day, during which time he had no sleep and but one meal. That during said period of time, he was taken to Indianapolis and given a second lie detector examination; thereafter, he was closeted in the lie detector interrogation room at State Police Headquarters with said two police detectives for approximately 45 minutes before anyone else entered the room. After being in the room 25 minutes appellant made his first admission of guilt of the crime charged.[1] The police officers stated that one or both of them shouted at appellant, and that they called him vile and obscene names five or six times in said interrogation room prior to obtaining his confession.

The statements by appellant as to violence being committed upon him by the police officers with a black jack, and otherwise, in the interrogation room were categorically denied by the officers. The officers also denied assertion of appellant that he made repeated requests for counsel. The first confession signed by appellant (State's Exhibit 13) was executed by him after he had been in the interrogation room with the officers for approximately 45 minutes to one hour. He was thereafter driven by said officers back to Terre Haute, and about 6:00 P.M. was permitted to eat his first meal that day. Upon his arrival at Terre Haute he was questioned again by the detectives, other policemen, the sheriff of Vigo County, the prosecuting attor-

---

[1] Appellant in such alleged confession admitted his part as an accessory to the killing of decedent by one Bernard Mogan. The prosecution of Mogan, the alleged principal, has since been dismissed by the State of Indiana for lack of evidence.

ney and the mayor. He was required to sit in, while his first confession was read to one Bernard Mogan from whom the detectives were trying to obtain a confession concerning the same crime. The questioning of appellant continued intermittently until they secured another confession, identified in the record as State's Exhibit No. 14. This confession was signed about 12:30 A.M. on January 13, 1953, and differed widely in certain respects from Exhibit No. 13.

Appellant was held in the custody of detectives Seward and Roach until around 6:00 o'clock in the morning of January 13, 1953, when he was taken before a committing magistrate and was bound over to the grand jury, after which he was returned to the Vigo County Jail. About 9:00 A.M. the same morning appellant was placed in a police car by said detectives Seward and Roach and was taken out to the point where the dead body was found, and there in the presence of witnesses appellant reenacted the manner in which the murder was allegedly committed, after which he was returned to the jail. Appellant's confessions or statements implicated Bernard Mogan as the one who shot Broyles.

Photographs were introduced in evidence by appellant, and appellee in its brief concedes that such photographs (taken three days after the violence allegedly committed upon appellant in the interrogation room) showed bruises on appellant's arm and chest, and a cut on his lip. Other witnesses, including an apparently disinterested newspaper reporter, and the news editor of a radio station testified as to bruises they observed on appellant, and the cut on his lip. One of the police officers testified appellant told a doctor who examined him, that the bruise on his arm was caused by appellant's attempt to hang himself at the jail the night

before said doctor examined him. This doctor was not produced at the trial to testify. No explanation is offered by the State as to how appellant received the bruise on his chest and the cut on his lip, which appellant claims was administered by police officers who had a blackjack which they used upon him. Medical evidence offered by appellant's doctor at the trial, which was uncontradicted, revealed the bruise of appellant's arm and the tenderness on examination of the left portion of his chest. Lt. Borkenstein of the State Police, a witness for the State, testified accused was "visibly shaken" after his interrogation in the interrogation room.

Appellant contends the confessions taken in this case were obtained while he was put in fear, threatened, intimidated, beaten and given the third degree, and deprived of sleep and rest and held incommunicado without giving him the right to counsel which he states he had requested.

Appellee (The State), however, contends that a confession made under inducement, with all the circumstances, may be given in evidence against an accused, except when made under the influence of fear produced by threats or intimidation or undue influence. Citing: Burns' Ind. Stats., §9-1607, 1956 Repl. See also: *Brown* v. *State* (1953), 232 Ind. 227, 233, 111 N. E. 2d 808, 811, 17 A. L. R. 2d 1003. Appellee also contends that the question of the admissibility of the confessions was for the trial court and that a confession is prima facie admissible in evidence, and that the burden of showing its incompetency is on the defendant. Citing: *Caudill* v. *State* (1946), 224 Ind. 531, 538, 69 N. E. 2d 549; *Eiffe* v. *State* (1948), 226 Ind. 57, 62, 77 N. E. 2d 750; *Mack* v. *State* (1932), 203 Ind. 355, 372, 180 N. E. 279, 83 A. L. R. 1349.

It is the unquestioned rule of law that confessions obtained by police officers through threats, fear, intimidation, physical force or violence, are inadmissible in evidence against an accused. *Bonahoon* v. *State* (1931), 203 Ind. 51, 178 N. E. 570, 79 A. L. R. 453; *Mack* v. *State* (1932), *supra.*

The statute cited by appellee as to the admissibility of confessions made under inducement[2] specifically excepts from its application confessions made under the influence of fear produced by threats or intimidation, etc., and therefore can have no bearing upon a case involving confessions taken when an accused is with sufficient cause apprehensive of peril or bodily harm to himself.

We recognize the authority of *Caudill* v. *State, supra,* and *Eiffe* v. *State, supra,* and *Mack* v. *State, supra,* cited by appellee and do not disagree with the rule that a confession is prima facie admissible and that the burden of showing its incompetency under the above statute[3] is on the accused. The admissibility of a confession is a question to be determined by the trial court which may hear evidence upon such subject and thereupon determine the competency of the confession, which ruling is subject to review by this court on appeal.

As this court said in the Mack case, and quoted in the Caudill case:

> " 'The securing of voluntary confessions from guilty criminals is to be desired, and the reasonable examination of prisoners charged with or suspected of crime is and should be allowed in the interest of public welfare and safety, but such examination should be kept within proper bounds. The law protects persons charged with

[2] Burns' Ind. Stats., §9-1607, 1956 Repl., *supra.*
[3] Burns' Ind. Stats., §9-1607, 1956 Repl., *supra.*

crime from ill or unjust treatment, and cruel and brutal methods should never be tolerated. *Bonahoon* v. *State* (1931), 203 Ind. 51, 178 N. E. 570.'" *Caudill* v. *State* (1946), *supra*, 224 Ind. 531, 538, 69 N. E. 2d 549, 552.

The unquestioned circumstances bearing upon the obtaining of the confession in the case at bar show the sudden taking of appellant without legal process from his bed at home at 7:30 A.M. by the police officers, his being taken to the city hall where he was fingerprinted and photographed, his trip with the officers to Indianapolis where he was placed under a lie detector, and thereafter vigorously interrogated by the same officers in the private interrogation room where appellant was admittedly shouted at numerous times and called vile and obscene names, the photographic evidence of bodily harm to appellant's chest and lip, which, although the officers denied they had inflicted as contended by appellant, such injuries to appellant were not explained by the prosecution upon the trial, the testimony of Lt. Borkenstein that appellant was visibly shaken, the signing of the first confession, the holding of appellant incommunicado by said officers for a period of 22½ hours during which time appellant had no sleep, and was given one meal, and was not given counsel which he stated he requested, the testimony of the disinterested reporter and news editor as to appellant's injuries and his scared and strained appearance, the *obtaining* of two additional varying confessions from appellant by the police officers.

Can this court properly conclude in the face of these circumstances attending the taking of the confessions, that the confessions were voluntary and properly admitted into evidence?

The Caudill and Mack cases, *supra,* at pp. 538 and 372 respectively, cited by appellee, state:

"The law protects persons charged with crime from ill or unjust treatment, and cruel and brutal methods should never be tolerated."

In the case of *Watts* v. *State of Indiana* (1948), 338 U. S. 49, 69 S. Ct. 1347, 1349, 1357, 93 L. Ed. 1801, ██ the U. S. Supreme Court said:

"Until his inculpatory statements were secured, the petitioner was a prisoner in the exclusive control of the prosecuting authorities. . . . Although the law of Indiana required that petitioner be given a prompt preliminary hearing before a magistrate, with all the protection a hearing was intended to give him, the petitioner was not only given no hearing during the entire period of interrogation but was without friendly or professional aid and without advice as to his constitutional rights. Disregard of rudimentary needs of life—opportunities for sleep and a decent allowance of food—are also relevant, not as aggravating elements of petitioner's treatment, but as part of the total situation out ·of which his confessions came and which stamped their character.

". . . A statement to be voluntary of course need not be volunteered. But if it is the product of sustained pressure by the police it does not issue from a free choice. When a suspect speaks because he is overborne, it is immaterial whether he has been subjected to a physical or mental ordeal. Eventual yielding to questioning under such circumstances is plainly the product of the suction process of interrogation and therefore the reverse of voluntary.

. . . . . .

"The very relentlessness of such interrogation implies that it is better for the prisoner to answer than to persist in the refusal of disclosure which is his constitutional right. To turn the detention of· an accused into a process of wrenching from him evidence which could not be extorted in open court with all its safeguards, is so grave an abuse of the power of arrest as to offend the procedural standards of due process." See also: *Suter* v. *State* (1949), 227 Ind. 648, 88 N. E. 2d 386; *Johnson* v.

*State* (1948), 226 Ind. 179, 78 N. E. 2d 158; *Kokenes* v. *State* (1938), 213 Ind. 476, 13 N. E. 2d 524.

Upon the basis of the uncontradicted evidence before us, we must conclude that appellant's confessions were not voluntary, and the lower court erred in admitting them into evidence.

As the other questions raised by appellant are not likely to arise on a retrial of this cause, we do not deem it necessary to discuss them.

Judgment reversed, with instruction to sustain appellant's motion for a new trial.

Emmert, Bobbitt, Achor and Arterburn, JJ., concur.

NOTE.—Reported in 135 N. E. 2d 512.