JOHNSON *v.* STATE OF INDIANA.

[No. 30,831. Filed April 18, 1968.]

*Nick J. Thiros,* and *Sheldon H. Cohan,* of Gary, for appellant.

*John J. Dillon,* Attorney General, *Ronald S. Timmons* and *Richard V. Bennett,* Deputies Attorney General, for appellee.

JACKSON, J.—Appellant was convicted by the Porter Circuit Court of first degree murder and sentenced to the Indiana State Prison for life. From such conviction he appeals.

Appellant was charged by an indictment filed in the Lake Criminal Court on May 11, 1961. The indictment, omitting formal parts, reads as follows:

> "The Grand Jurors of Lake County, in the State of Indiana, good and lawful men, duly and legally impaneled, charged and sworn to inquire into felonies and certain misdemeanors in and for the body of said County of Lake, in the name and by the authority of the State of Indiana, on their oaths present that one OTHELLO L. DIXON, JOHNNIE WILL JOHNSON, J. C. REED & McCLENTON GEE, of said County, on the 17th day of February, A.D., 1961, at said County and State aforesaid, did then and there unlawfully and feloniously kill and murder one JULIA SUPERCZYNSKI while they, the said OTHELLO L. DIXON, JOHNNIE WILL JOHNSON, J. C. REED & McCLENTON GEE, were then and there engaged in unlawfully, feloniously and burglariously attempting to break and enter into the apartment of one FRANK MARTINEZ, a place of human habitation, with intent to then and there steal, take and carry away the personal property of the said FRANK MARTINEZ; and that the said OTHELLO L. DIXON, JOHNNIE WILL JOHNSON, J. C. REED & McCLENTON GEE, at the time of and while engaged in the attempted perpetration of said burglary, as aforesaid, did then and there unlawfully and feloniously kill and murder the said

JULIA SUPERCZYNSKI by then and there unlawfully and feloniously binding and gagging the said JULIA SUPER-CZYNSKI with cord and rope and forcing into the throat of the said JULIA SUPERCZYNSKI certain rags and cloth materials, then and there and thereby causing the said JULIA SUPERCZYNSKI to choke, suffocate and strangle, from which choking, suffocation and strangulation the said JULIA SUPERCZYNSKI then and there died, then and there being contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

On June 12, 1961, defendants Reed and Gee entered pleas of not guilty. On August 8, 1961, defendant Dixon entered a plea of not guilty. Appellant entered a plea of not guilty on August 16, 1961. On October 16, 1961, Dixon withdrew his plea of not guilty, pleaded guilty and was given a life sentence. Thereafter the charge against Gee was dismissed upon a motion by the State.

On June 13, 1962, appellant filed his Motion to Suppress and Reject Evidence, seeking to suppress the written statement purported to be a confession he had signed. The Porter Circuit Court overruled the motion to suppress.

The cause was submitted to the court without the intervention of a jury. At the trial the court overruled appellant's objection to the admission of his purported confession and admitted the purported confession into evidence.

Appellant's Motion for a New Trial was overruled by the Special Judge on June 11, 1965. The Motion for a New Trial, omitting formal parts, reads as follows:

"Comes now the Defendant in the above entitled cause, and moves the Court for a new trial thereof upon the following grounds, and for the following reasons:

1. Error of law occurring at the trial, in this, to-wit: The Court admitted into evidence Defendant's statement taken by police officers of the City of Gary on March 4, 1961, over Defendant's objection that said statement had been obtained from Defendant after Defendant had been submitted to extensive periods of questioning by said officers of the Gary Police Department; that Defendant had been

beaten by said officers of the City of Gary prior to Defendant signing said statement; that Defendant was not advised of his constitutional rights and right to counsel prior to being requested to affix his signature to said statement; that Defendant was not given an opportunity to examine and read said statement prior to signing it; that Defendant had requested counsel and had been refused permission to consult with counsel prior to signing said statement; that Defendant had been refused permission to consult with members of his family although on two occasions Defendant's brother, James Johnson, had requested and was denied permission to consult with Defendant, on the first such ocasion Defendant's brother had attempted to see Defendant, the Defendant had not signed said statement and had specifically requested permission to consult with members of his family regarding his arrest and confinement.

2. Error of law occurring at the trial, in this, to-wit: That the Court admitted into evidence, during the presentation of the State's case, State's Exhibits #11 and #12, alleged to be pictures taken of the apartment of the deceased, Julia Superczynski, over Defendant's objection, upon such Exhibits being offered by the State, that the introduction into evidence of these photographs were not material to the charges made against the Defendant since Defendant had been charged by the indictment with the murder of Julia Superczynski while attempting to break and enter into the apartment of Frank Martinez with intent to take and carry away the personal property of the said Frank Martinez and not the burglary of the apartment of Julia Superczynski and that the admission into evidence of said exhibits are a variance with what the State has the burden of proving and what it was attempting to prove by the introduction of such evidence.

The Court overruled Defendants' objection and said Exhibits were admitted into evidence.

3. Error of law occurring at the trial in this, to-wit: Upon the close of the State's case, and after the State had rested, Defendant moved for a finding of not guilty on the grounds that the State had failed to prove the allegation set forth in the indictment and in particular had failed to prove the felonious intent alleged in the indictment that Defendant had intended to take, carry away and steal the personal property of Frank Martinez in which motion it was shown to the Court that no evidence had been introduced to show Defendant had intended to burglarize the apartment of the said Frank Martinez and that the evidence clearly estab-

lished that the Defendant and his co-defendants intended to burglarize the apartment of or rob the deceased, Julia Superczynski, and that proof of any other intent than that specifically alleged in the indictment was a fatal variance in the State's case and further was equivalent to a failure on the part of the State to prove each and every essential allegation in the indictment.

The Court having heard arguments from Defendant and the State overruled Defendant's motion and advised Defendant to proceed.

4. Error of law occurring at the trial, in this, to-wit: That the Court overruled Defendant's motion after resting without presenting evidence for a finding of not guilty on essentially the same grounds as set forth in assignment number three (3), to-wit: That the State had failed to prove each and every essential allegation in the indictment beyond a reasonable doubt, in particular, the allegation as to the intent of the Defendant to take, carry away and steal the personal property of Frank Martinez and that the only evidence offered by the State dealing with the question of intent clearly indicated that Defendant's intentions were not to take, carry away and steal the personal property of Frank Martinez, but rather to burglarize the apartment of or rob the deceased, Julia Superczynski.

6. That the finding of Court is contrary to law.

7. That the finding of the Court is not sustained by sufficient evidence."

Appellant's single Assignment of Error is:

"The Court erred in overruling Appellant's motion for new trial."

Due to the determination we are required to make in this case we deem it necessary to discuss only the first specification of appellant's motion for a new trial. Appellant asserts the trial court erred in allowing into evidence over appellant's objection State's Exhibit No. 20, the written statement purported to be appellant's confession.

The facts pertinent to a consideration of this case may be summarized as follows: The crime with which appellant was charged allegedly occurred on February 17, 1961. Appellant

was arrested, without warrant, at his home on March 4, 1961, about 4:30 in the morning when the officers came to his house, knocked on the door and said, "Police open up." He opened the door. One officer came in with a gun. Appellant was handed some clothes and was told to put them on. He was then taken to Gary City Jail, arriving about 5:00 a.m. His personal belongings were taken from him. When he asked why he was brought to the police station, he was told, "We ask the questions. You answer them." He was then taken upstairs and locked up until 4:00 o'clock that evening when he was taken downstairs where Officers Mullins, Barsley and Captain Demitroulas were waiting. He was there interrogated by the officers during the course of which he was shoved and slapped across the face. He was told that he "wasn't doing anything but playing with the electric chair if he got that far." When appellant asked permission to call his brother, Captain Demitroulas said, "Take him back upstairs." He was then taken back upstairs, about 4:45 p.m. He was not advised why he was being held. About 10:00 p.m. on March 4 he was again brought down. Officers Mullins and Barsley took him to a small room and began questioning him. Appellant asked what he was there for. He was asked by Officer Mullins where he was on February 17. When he replied he did not know and asked what difference it made, Officer Mullins said, "You are smart." The interrogation continued during which Officer Barsley hit appellant. When appellant asked what he was there for and asked to call his brother, Officer Barsley said, "If you don't cooperate with us and tell us what we want you won't need no brother" and then hit defendant in the stomach with his fist. He had a night stick and kept punching the appellant in the stomach and around the back with it. During the questioning appellant was handcuffed. Appellant testified he did not know how long this questioning lasted and that when they were through with him he didn't know what time it was and that he had been hit so often he couldn't tell how many times. He was then

advised the officers had some papers he was to sign in front of them but he did not see the papers. He was then taken back to his cell. About an hour and a half later, by his estimate, he was brought back down to the same small room. He was asked if he was "going to sign those papers for us or not." Appellant asked what it was and was told, "You are going to sign it." Officer Barsley left the room and appellant was taken to another small room where Officer Schulz was. The officer advised him to do what they say. Then he was taken back to the other room and present there were Othello Dixon, Reed, Officers Mullins and Barsley. Mullins asked appellant his name and address, and appellant told him. He then asked appellant if he was married and "how many kids you got," and appellant told him. Then officer continued typing and when he finished typing, he shoved the paper over to appellant. (Identified as State's Exhibit No. 20.) Appellant testified he was not advised that the statement could be used against him, that he had a right to refuse to sign or that he was entitled to consult with an attorney before signing, nor was he advised at any time during his detention that he could consult with an attorney. He was denied permission to call his brother. While he was confined in his cell he could see through his cell window his relatives coming to the police station but was not allowed to converse or communicate with them. Appellant testified he was brought down to sign the statement, and when he got through the signing it was between 2:00 and 3:00 in the morning on March 5, 1961. He knew the time because there was a clock over the door in the office.

No denial is made by the State that appellant was arrested without warrant more than two weeks after the date of the commission of the alleged crime. Nor is it denied that appellant was kept in jail without being taken before a magistrate or charged with any offense for a period of several days, one date alleged being March 8, 1961. One of the officers (Barsley) testified, "We took the party to Crown Point prosecutor's office."

"Q. When did you do that?
A. I believe it was the — I am not sure. It was either the following day or the day after that the statement was taken."

Appellant testified he signed the confession between 2:00 and 3:00 o'clock on the morning of March 5, 1961. That was on Sunday, so if we take Officer Barsley's statement as to the latest appellant was taken to Crown Point it would be Tuesday, March 7, 1961. So it is immaterial whether the date appellant was charged in Crown Point was Tuesday, March 7, or Wednesday, March 8, 1961. The arrest without question occurred March 4, 1961 about 4:30 a.m.

The statements by appellant as to violence being committed upon him and failure to advise him as to why he was being held were denied, as were statements that he was denied the use of a telephone to communicate with his family. There was no denial of the brother's testimony however that he was not permitted to see appellant at 9:00 o'clock on March 4th, 1961, or on the following Monday, nor that he was not permitted to visit appellant until the following Thursday. The testimony of Officer Mullins on cross-examination relative to phone calls is revealing, viz: *That if a defendant has asked for permission to call his family or his attorney after his arrest, the circumstances of the case would dictate the phone calls. That it is generally discretionary with the officers assigned to a case whether a person arrested could or could not call members of his family or an attorney. That it's within the prerogative of the officer assigned to the case.*

There is one other facet to this case deserving of brief mention. Two of appellant's co-defendants in the original indictment testified as to the signing of the confession by appellant, as witnesses for the State. One of these was McClenton Gee, as to whom the charge was dismissed and who, on cross-examination said he appeared as a State's witness at the suggestion of his lawyer who told him if he would come in and be a State's witness the charges of murder would

be dropped. J. C. Reed also testified as a State's witness as to the signing of the confession by appellant. The witness testified he was the same J. C. Reed that had pleaded guilty to conspiracy to commit a burglary and not yet sentenced, had pleaded to the charge "Maybe nine months ago." He has never been told why he has not been sentenced. He wondered why. He talked to Mr. Stenhouse, Officers Mullins and Barsley about testifying in this case.

Appellant contends the confession taken and admitted in evidence in this case was obtained while he was put in fear, threatened, beaten, held incommunicado, without giving him the opportunity to get in touch with his family or counsel all of which constituted error on the part of the court below; that the confession was not made freely, voluntarily and without compulsion or inducement of any sort; that where the issue is the constitutionality of the admission of a confession in a criminal matter the range of inquiry must be broad and the judgment in each instance must be based upon consideration of the totality of the circumstances; and finally that appellant's confession was not voluntary and was not the product of free will and was admitted into evidence in violation of appellant's constitutional rights under the due process clause of the Fourteenth Amendment and the self incrimination clause of the Fifth Amendment to the Constitution of the United States.

Appellee says there is a wealth of testimony in the record to contradict appellant's averment of police violence. J. C. Reed, a co-defendant, said he had not seen anyone strike Johnson. Officer Barsley when asked if anyone struck or abused Johnson replied, "No". Barsley also when asked if he saw Captain Demitroulas strike or slap Johnson answered, "No sir". Officer Mullins testified on cross-examination he did not slap the appellant or pick up the appellant and throw him back down against the chair.

Finally the appellee says,

"It must be kept in mind that this court will not weigh the evidence relative to the admissibility of a confession. *Caudill* v. *State* (1946), 224 Ind. 531, 69 N. E. 2d 549. The admissibility of a confession is a question which is determined by the trial court. *Randolph* v. *State* (1954), 234 Ind. 57, 122 N. E. 2d 860 cert. denied 350 U. S. 889, 76 S. Ct. 145, 100 L. Ed. 783; *Pearman* v. *State* (1954), 233 Ind. 111, 117 N. E. 2d 362. It is the duty of the trial court to determine whether a confession made by a defendant is incompetent upon the ground that it was made under the influence of fear produced by threats, intimidation or undue influence. *State* v. *Laughlin* (1908), 171 Ind. 66, 84 N. E. 756; *Hauk* v. *State* (1897), 148 Ind. 238, 47 N. E. 465."

There is much about this case that causes us concern. We agree generally with the position taken by the State and the authorities cited in support thereof that the court will not weigh evidence, that the admissibility of a confession is a question for determination by the trial court, that a confession is prima facie admissible and the burden of showing its incompetency is on the accused, etc. These are general rules subject, however, to review by this Court for the purpose of deciding as a question of law whether there is substantive evidence in support of the required material facts essential to a conviction. The ruling by the trial court on the admissibility of a confession is subject to review by this Court on appeal. As was said in *Mack* v. *State* (1932), 203 Ind. 355, 371, 372, 180 N. E. 279, and quoted in *Caudill* v. *State* (1946), 224 Ind. 531, 538, 69 N. E. 2d 549, and again in *Wallace* v. *State* (1956), 235 Ind. 538, 544, 545, 135 N. E. 2d 512:

"The securing of voluntary confessions from guilty criminals is to be desired, and the reasonable examination of prisoners charged with or suspected of crime is and should be allowed in the interest of public welfare and safety, but such examinations should be kept within proper bounds. The law protects persons charged with crime from ill or unjust treatment, and cruel and brutal methods should never be tolerated. *Bonahoon* v. *State* (1931), 203 Ind. 51, 178 N. E. 570."

It appears without contradiction in the case at bar that the following facts existed:

A. An illegal arrest without a warrant and without probable cause at 4:30 or 5:30 in the morning.

B. Detention without the right or permission given to use a telephone to call anyone.

C. Denial of permission to the brother to see the defendant on the day of arrest and thereafter, although he made several trips to see defendant, until Thursday after defendant had signed the confession, been taken to Crown Point, charged by affidavit with Murder in First Degree, and returned to the city jail at Gary.

D. Use of threats and undue influence.

E. Mental weakness on the part of the appellant.

F. Failure to advise appellant of his absolute right to remain silent.

G. Failure to advise appellant that he had a right to consult counsel.

H. Failure to take appellant before a magistrate as required by law.

I. Failure to advise appellant he had a right to refuse to sign the confession, or to advise him he had a right to consult with counsel before doing so.

J. Failure to take into account appellant's lack of any previous record and his lack of experience of police procedure, or perhaps to state it more accurately, the taking advantage of defendant's lack of experience to completely deprive him of constitutional rights during the period of time from his arrest until he was charged at Crown Point, during which period of time the confession was obtained.

In determining whether the due process clause of the 14th Amendment is violated, the admissibility of the confession is tested by the same standard in both Federal and State prosecutions, that is whether under all the attendant circumstances, the confession was free and voluntary, freely self-determined, the product of a rational intellect and a free will, and without compulsion or inducement of any sort, or whether the accused's will was overborne at the time he confessed. *Malloy* v. *Hogan* (1964), 378 U. S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489; *Lynumn* v. *Illinois* (1963), 372 U. S.

528, 9 L. Ed 2d 922, 83 S. Ct. 917; *Townsend* v. *Sain* (1963), 372 U. S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745; Annotation 1 L. Ed. 2d 1735; Annotation 4 L. Ed 2d 1833; Annotation 12 L. Ed. 2d 1340.

On the basis of the uncontradicted evidence before us, and on the authority of the cases cited, we must conclude that the appellant's confession was not voluntary, and the lower court erred in admitting it into evidence.

The other questions raised by appellant are not apt to arise on a retrial of this cause and therefore are not discussed.

Judgment is reversed with instructions to grant appellant's motion for a new trial.

Hunter and Mote, JJ. concur; Lewis, C. J. concurs in result; Arterburn, J. not participating.

NOTE.—Reported in 235 N. E. 2d 688.