JAMES HAMP AND DAVID PEPPER *v.* STATE OF INDIANA.

[No. 1-872A40. Filed April 18, 1973.]

*Lorin H. Kiely, Phillip L. Kiely,* of Evansville, for appellants.

*Theodore L. Sendak,* Attorney General, *Anthony J. Metz, III,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendants-appellants (Hamp and Pepper) were convicted by jury of Robbery and sentenced to not less than 10 nor more than 25 years.

Defendants contend that certain evidence tended to prove a crime other than the one charged and was therefore irrelevant and inadmissible. The specific evidence complained of was: (1) Testimony of a police officer concerning the arrest, (2) A revolver and shells obtained during a search of the auto in which the defendants were arrested, (3) Testimony concerning the search, and (4) The envelope in which the shells were kept by the police and testimony concerning it. Defendants also allege error in the failure to grant a mistrial because of a newspaper article about the defendants.

Walt Widmer testified that on the morning of August 29, 1971, he and his nine year old daughter were at the service

station he operated in Evansville. At approximately 1:15 A.M., the two defendants, accompanied by two women, drove into the station in a 1964 Chevrolet. Widmer filled the tank with gasoline and went into the office to ring up the sale.

Hamp and Pepper had already walked into the office. When Widmer opened the cash register, Hamp pulled out a long-barreled, chrome, .38 caliber revolver. They forced Widmer to put about $200.00 from the cash register in his shirt pocket and threatened to take Widmer and his daughter with them. Widmer took the money out of the register only after they agreed to leave his daughter there and take only him.

Hamp and Pepper then forced Widmer to leave with them in Widmer's dark green, 1971 Corvette. The car was distinctively marked with gold striping and a gold "W" on the hood. Apparently the women followed in the 1964 Chevrolet.

While driving some distance out in the country, they warned Widmer several times at gunpoint, "if you make a move or try anything, I will blow your ass off". After stopping, they took the money from Widmer and ordered him to "start walking out in the field." He had walked approximately 20 feet when both the 1964 Chevy and his Corvette "pulled off."

At the trial Widmer positively identified Hamp and Pepper as the two men who robbed him, and the revolver as resembling the one used during the robbery.

Widmer's daughter also identified Hamp and Pepper as the two men who robbed Widmer at gunpoint and she positively identified the revolver.

John Ramos, an East Chicago police officer, testified that the next day, while on duty, he received a radio dispatch concerning a dark green, 1971 Corvette with distinctive gold markings and an armed robbery of a gas station in East Chicago. He and three other officers stopped the auto and arrested Hamp and Pepper.

John Cordona, another East Chicago police officer, testified that he and officer Baisa helped stop the car and that Baisa

found the loaded .38 revolver on the car seat. He also identified an envelope in which officer Baisa placed the shells taken from the revolver.

Bob Hollis, an Evansville police detective, testified that he investigated the robbery and that he returned Hamp and Pepper to Evansville from East Chicago. He stated that during the trip, after he advised them of their constitutional rights, Hamp and Pepper discussed the robbery with him.

After a remark that the Corvette was a good automobile, they observed that " 'they go first class. If you are going to drive a car you might as well drive a good one.' " One of them also remarked that "he had this car up to 140 at one time."

In response to Hollis' query as to why they held up Widmer's station, they replied, "don't know, just needed money."

Hollis also testified that in discussing the two women in the Chevrolet, Hamp said "you don't have to worry about them, because they had plane tickets and they are across the border in Canada."

The only evidence presented by defendants concerned their sanity which is not at issue here.

Defendants first contend that admission of the revolver and shells into evidence was error because they tended to prove an alleged robbery in East Chicago.

The State maintains that since the revolver was identified as the one used during the robbery, it was sufficiently connected with the crime charged to be admissible. We agree.

Evidence which is relevant to proof of the crime charged is admissible even though it may tend to prove another, unconnected crime. *Kallas* v. *State* (1949), 227 Ind. 103, 83 N.E.2d 769. See also, *Hensley* v. *State* (1969), 251 Ind. 633, 244 N.E.2d 225, and *Anderson* v. *State* (1933), 205 Ind. 607, 186 N.E. 316.

The revolver was identified by an eyewitness as the one used in the crime charged. Therefore, it and the shells taken

from it, as well as testimony identifying them, were admissible. The fact that the revolver was used in another robbery does not render it inadmissible in the case at bar.

Defendants next maintain that the testimony of officer Ramos concerning the arrest of Hamp and Pepper was inadmissible. The testimony complained of was:

"Q. Officer Ramos, you stated before you received information concerning this particular Corvette. What was the source of that information?
Mr. Kiely: We object to that for the reason it is hearsay evidence they received, not relevant or material to the issues, and not part of the res gestae.
COURT: Overruled.
Q. What was the source of that information?
A. There was a radio dispatch put out.
Q. What was the nature of that radio dispatch?
A. Armed robbery that took place at a gas station in our city.
Mr. Kiely: We object to that if the court please and move to strike the answer and to instruct the jury to disregard it. I would like to have the jury excused.
JURY EXCUSED"

After the jury was excused, defendants also objected because the evidence tended to prove a separate crime. They requested a mistrial which was denied.

Just prior to this testimony, however, the prosecutor had asked whether the defendants had been searched. Defense counsel objected on the grounds that the search was illegal. This objection was sustained. The State then was required to show probable cause for the arrest if it wished to show the search valid and the evidence seized therein [revolver and shells] admissible.

After the jury returned, the trial court asked each individual member if they remembered the last answer. He admonished them as a group to disregard it and then admonished each of them individually to disregard it and not to discuss it should they remember it later.

Any error which may have existed was cured by the trial court's thorough admonitions to the jury. Therefore, the court did not abuse its discretion by failing to grant a mistrial.

Defendant further complains of the following testimony of officer Cordona. After he identified Hamp and Pepper, Cordona testified:

"Q. After they got out of the vehicle, did either you or Officer Baisa search that vehicle?
A. Yes, Officer Baisa.
Q. Officer Baisa searched it?
A. Yes.
Q. Was that done in your presence?
A. Yes.
Q. What, if anything, did Officer Baisa find in the vehicle in your presence?
Mr. Kiely: We make the same objection as to what he found in the automobile, for the reason it does not tend to prove any essential elements of the crime charged against them in Vanderburgh County, and does not have but one purpose and effect and that is to prejudice the defendants in the minds of the jury, and for the further reason that the article was siezed [sic] as the result of an unlawful arrest and unlawful search and siezure. [sic]
COURT: Show that the court overrules the same.
Mr. Kiely: And it tends to prove the defendants, each separately of a separate, distinct and independent offense unrelated to the offense for which he is on trial, to-wit: *possession of a revolver.* (Our emphasis.)
COURT: Overruled.
Q. What did Baisa find in your presence?
A. He found a five inch chrome plated yellow handled 38 revolver on top of the seat."

This testimony establishes the defendants' possession of the revolver used in the crime charged. Therefore, it was admissible for the same reasons the revolver and shells were admissible.

Concerning the envelope in which the police stored the shells, Officer Cordona testified:

"Q. I will show you what has been marked State's Exhibit #8 and ask if you can identify that?

Mr. Kiely: We object to that for the reason it does not tend or disprove any of the issues involved, and not relevant or material to the issues.

COURT: OVERRULED.

Q. What is it, officer?

A. This is the envelope that contained the .38 caliber shells we found in this chrome plated revolver.

Q. The weapon you recovered was loaded at the time you recovered it?

A. Yes, sir."

The envelope had the following printing on it:

"6, 38, CAL BULLETS R.P.
FOUND IN A, 67 CORVETT, [sic]
38 SMITH AND WESSON,
5 INCH GUN.
USED IN HOLDUP OF CLARK
GAS STAITION [Sic] ON INDPLS,
BLVD
BAISA & CARDONA
STATE'S EX 8"

Later State's exhibits 7 (the revolver), 8 (the envelope) and 9 (the shells) were offered into evidence together. Defendants made the following blanket objection:

"Mr. Kiely: To which the defendants object as to the introduction into evidence of State's Exhibits 7, 8 and 9 for the reason that it is not relevant or material to the issues involved in this cause of action and for the further reason that they were siezed [sic] as an unlawful search and siezure [sic] and unlawful arrest of the defendants; for the further reason there is no evidence connecting the defendants or either of them with the possession and control of this particular weapon."

The trial court overruled the above objections and admitted these exhibits into evidence. On appeal defendants argue only that the exhibits were irrelevant because they tended to prove a separate crime. We have previously held that the revolver and shells were admissible and now direct our attention to the envelope.

The envelope, unlike the gun and shells, had no direct connection with the crime charged. It might be argued that an envelope in which admissible evidence had been ▮ stored should be itself admitted, where chain of custody or identity was at issue. However, the reference to the holdup of a Clark gas station on Indianapolis Boulevard was clearly not connected with the Evansville robbery.

The envelope should not have been admitted into evidence because of the statement on it alluding to the East Chicago robbery. However, the error, if any, must be reviewed in light of the harmless error standard. *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387. See also, *Moore* v. *State* (1972), 258 Ind. 200, 280 N.E.2d 57 and *Brown* v. *State* (1972), 258 Ind. 412, 281 N.E.2d 801.

In *Dillard, supra,* a constitutional error was held harmless because "two very solid eye-witnesses . . . identified appellant, the appellant [was] found running near the scene of the robbery with over $500.00, the amount stolen, stuffed loosely in his pockets, the gun used [was] found near the point of appellant's arrest, appellant's defense rested on insanity . . . and the witnesses he presented did not controvert any of the State's case."

In the case at bar, we have two eyewitnesses who identified appellants, who were apprehended in the victim's car, with the robbery weapon still in their possession. The defense here also rested on insanity and no evidence was offered to controvert the State's case. We also have uncontroverted evidence that the appellants admitted they committed the crime because they "needed money."

Due to the overwhelming evidence of defendants' ▮ guilt, the error in admitting the envelope must be classed as harmless pursuant to *Dillard, supra.*

Defendants claim prejudice because a local newspaper ran an article during the trial, stating that jury selection for the

trial of defendants had begun and that defendants had previously escaped from jail.

The trial court polled the jury individually and each stated he had not read the article. As the court said in *Harris* v. *State* (1967), 249 Ind. 681, 231 N.E.2d 800:

> "Even if appellant had shown that some member of the jury read the article, it is clear that the reading of a newspaper article pertaining to the case by a juror is not grounds for mistrial, new trial or reversal unless it is shown that the jurors were influenced thereby."

In the case at bar, no member of the jury having even read the article, no influence or prejudice can be shown and no error exists.

No reversible error having been shown, the judgment is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 294 N.E.2d 817.