DENNIS KEITH LAUER *v.* STATE OF INDIANA.

[No. 1-1172 A 93. Filed May 29, 1973.]

*Malcolm G. Montgomery,* of Evansville, for appellant.

*Theodore L. Sendak* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Lauer, was convicted by jury of Armed Robbery and sentenced to ten years. He appeals, arguing and thus preserving, two allegations of error: (1) The admission of his confession, and (2) The giving of an instruction concerning the use of a knife.

The evidence showed that on January 19, 1972, John Kuykendall, the night operator of an Evansville service station, was robbed at knife point. Kuykendall identified the defendant at trial and testified that Lauer pointed a nine or ten inch knife at him, saying, " 'I don't want to hurt you but I

will, all I want is your money.'" Approximately $28.00 was taken.

Three days later, Lauer was arrested and advised of his constitutional rights. He told the arresting officer he was 18 years of age.

The defendant signed a written statement admitting the robbery. He now contends error in the admission of the statement because of alleged promises made by police officers to induce the confession.

Lauer specifically contends that the police officer's indication that he might receive a suspended sentence, induced the confession, when in fact the statute prohibits a suspended sentence. IC 1971, 35-12-1-1; Ind. Ann. Stat. § 10-4709 (Burns 1972 Supp.)

At a hearing on Lauer's Motion to Suppress, he testified:

"Q. Were any promises made to you to sign this statement?
A. Not exactly promises.
Q. What did Officer Baumeyer say to you?
A. Told me being my first offense, if I'd cooperate, he'd seen cases before where they received probation and he said he could tell them that I cooperated with him.
Q. Now, did he tell you this prior, before you gave him the statement?
A. Yes, sir.
Q. Did this induce you to sign that statement?
A. Yes, sir.
Q. Would you have signed it if he had not made these promises to you?
A. I don't believe so.
Q. Did he say anything else to you before that?
A. He just told me it would be easier on myself."
Officer Baumeyer testified:
"Q. Officer Baumeyer, did you tell the defendant, Dennis Keith Lauer, in response to his questions, that people charged with Robbery have got suspended sentences?
A. Yes, sir, I told him both ways.

Q. Are you familiar with the law of Robbery?
BY WITNESS: Of Robbery?

Q. Yes, Armed Robbery?

A. Armed Robbery. Well, I'm not that—I mean—

Q. Are you familiar that unless a person gets a reduced charge, that the Court has no lee-way and cannot give a suspended sentence in a Robbery case?

A. No, if that's it, I didn't know it.

Q. But still you indicated to him that there was a possibility of a suspended sentence, is that correct?

A. Well, now, yes and no. I mean I told him that in past cases, on certain incidents where on first offenders, and things like that, I have seen them be given a suspended sentence and also I have seen them sent to jail.

\* \* \*

Q. But you did tell him that he was charged with Robbery, or that he was under investigation for Armed Robbery of the Red Bird Service Station, is that correct?

A. Yes, sir."

Lauer's only citation of authority is *Johnson* v. *State* (1968), 250 Ind. 283, 235 N.E.2d 688, for the proposition that:

"In determining whether the due process clause of the 14th Amendment is violated, the admissibility of the confession is tested by the same standard in both Federal and State prosecutions, that is whether under all the attendant circumstances, the confession was free and voluntary, freely self-determined, the product of a rational intellect and a free will, and without compulsion or inducement of any sort, or whether the accused's will was overborne at the time he confessed."

In applying this principle to the facts of the case at bar, we find that the trial court correctly held that Lauer's confession was freely, rationally and voluntarily given.

In *Johnson*, the defendant was jailed for three days without being arraigned, without being informed of the charge, and interrogated without being advised of his rights. In addition, he was handcuffed and beaten by police officers, held incommunicado, threatened and told that he " 'wasn't doing anything but playing with the electric chair if he got that far.' "

A far different set of circumstances exists in the case at bar. There is nothing to indicate any mistreatment of Lauer. In fact, the only suggestion of "inducement" is contained in the above testimony.

By way of contrast with *Johnson*, Lauer was advised of his right to remain silent, to have an attorney present at any questioning and that an attorney would be appointed if he had no money. He testified that he understood these rights.

Lauer further testified that he was informed of the crime with which he was charged, both at the time of the arrest and at the police station. He was not promised freedom from prosecution, nor was he promised a suspended sentence if he confessed. He further acknowledged that he was not promised a reduced charge. Lauer was arrested on a Saturday night, and arraigned as soon as court convened the following Monday morning.

Lauer's statement itself contained the following:

"Question; Have you been treated right during the taking of this statement?
Answer; Yes
Question; Have you been promised anything for giving this statement?
Answer; Sure haven't."

At the hearing, Lauer also testified:

"Q. Did you at that time have any belief that the Police Department could withhold your prosecution?
A. No.

Q. Now, with regard to any probation that you might be awarded, did you understand at the time whose decision that would be?
A. Yes, sir.

Q. Whose?
A. The Court's.

Q. Not Mr. Baumeyer's?
A. Right.

Q. Did you believe that Mr. Baumeyer exercised any authority over the Judge of this Court or any other court?

A. No, sir."

\* \* \*

"Q. Now, again, when Baumeyer told you this, did this induce you to do it or did you just do it out of the goodness of your heart to make this police officer have a good record?

A. I was trying to help myself, from the way he talked.

Q. Well, did you think he could help you for [sic] not?

A. I figured I was helping myself.

Q. Well, did he say he would do anything for you?

A. He said he could come over and tell them I cooperated.

Q. Did he say anything about a suspended sentence?

A. No, he didn't.

Q. Has anybody said anything to you about a suspended sentence before you go to trial today?

A. No."

Viewing the circumstances in their entirety, we hold that the trial court properly admitted Lauer's confession after finding that it was freely and voluntarily given.

Lauer next contends that the giving of State's Instruction No. 2 was error. The instruction and the objection thereto read:

INSTRUCTION:

"The use of a knife is sufficient to establish the 'violence or putting in fear' element of robbery."

OBJECTION:

"The defendant would object to State's Instruction No. 2 for the following reasons:

1. It invades the province of the jury.
2. It calls undue emphasis to the evidence in the case.
3. It doesn't adequately state the law in the State of Indiana."

Lauer maintains that the above instruction was mandatory and invaded the province of the jury. He argues that since the instruction did not contain words of qualification, such as " 'you may' " or " 'if you find' ", it in effect told the jury

that Lauer did use a knife and was therefore guilty. He also maintains that the instruction was erroneous because the word "violence" was emphasized in all three of the State's instructions.

Under the facts in the case at bar, the giving of the above instruction was not erroneous. We believe the instruction is a correct statement of the law. See *Kidwell* v. *State* (1967), 249 Ind. 430, 230 N.E.2d 590, wherein a knife was held to be capable of being used as a dangerous or deadly weapon.

It would be virtually impossible for a court to properly instruct a jury on the elements of Armed Robbery without mentioning the phrase "by violence or by putting in fear" in connection with the use of a "dangerous or deadly weapon". There were 25 instructions read to the jury, and taken as a whole, the instructions did not unduly emphasize the evidence.

The evidence was uncontradicted that defendant did in fact use a knife to threaten his victim in the course of the robbery. The instruction explained one of the elements of the robbery and was neither mandatory nor an incorrect statement of the law.

Judgment affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 296 N.E.2d 446.