ROSA LEE SMITH, ALIAS DONNA ROWIE *v.* STATE OF INDIANA.

[No. 1-873A141. Filed June 27, 1974. Rehearing denied August 6, 1974.]

*Parr, Richey, Obremskey, Pedersen and Morton,* of Lebanon, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Smith) is appealing her conviction by a jury of the offense of robbery. Her overruled motion to correct errors raises eleven issues. We affirm.

Prior to a discussion of the various issues it should be noted that this court will not weigh the evidence but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict. *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888.

A summary of the facts giving rise to the appeal are: Theis, a truck driver, stopped at a rest park off of the southbound lanes of I-65 in Boone County, Indiana, early one morning to check the cause of a vibration in his truck. While looking in the engine compartment a woman nudged Theis and asked him if he wanted a date. Theis said no. Theis saw a metal object in the woman's hand which he thought to be a knife. The woman inquired how much money Theis had. Theis said about $20. The woman said she wanted the money. Theis tossed his billfold to her from which she removed a twenty, two tens, a five and a one dollar bill. She threw the billfold back to Theis and walked towards a light over dark Mustang. The Mustang was parked behind Theis's truck and had a patched right front fender. It was dark with the only light being the twenty some clearance lights on the truck. Because of these lights Theis testified he had no difficulty seeing the woman. He described her as black, shorter than he, and wearing a shiny black leather jacket with dark slacks. Theis identified Smith at trial as this woman. Theis also testified he was frightened during the experience. Theis then drove to a truck stop further south on I-65 and called the State Police.

State Police Trooper Allen, while patrolling on I-65, drove through the southbound rest park. He observed a white over

blue Mustang leaving the rest park. He stopped the car and asked the driver, Johnson, to get in the police car. Two men, Gibson and Moore, remained in the Mustang while Smith, dressed in dark slacks and dark leather coat, walked between the Mustang and the police car during the time Trooper Allen was talking to Johnson. Trooper Allen received a radio report of a robbery committed at the rest park by a woman who got into a car matching the Mustang. Trooper Garland then arrived on the scene and assisted in searching Gibson and Moore. The police found $57, a twenty, three tens, a five and two ones, on Moore when he was searched. The four were taken to the Boone County Jail where Theis identified Smith as the woman who robbed him.

## ISSUE 1

Smith filed a motion to suppress the identification testimony of Theis. It is the overruling of that motion that raises the initial issue.

Approximately 30 minutes to an hour after Theis was robbed the two troopers arrived at the jail with the four occupants of the Mustang. Theis arrived at the jail a few minutes later. Theis identified Smith, the only black woman present, as the robber. Smith was under arrest when brought to the jail. An affidavit charging Smith with the crime was filed after a probable cause hearing, later the same morning. Smith did not have counsel at the time Theis identified her.

Smith contends that the pre-trial confrontation was impermissibly suggestive and that she had not waived the right to counsel at this time.

We are of the opinion that *Kirby* v. *Illinois* (1972), 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877, disposes of Smith's argument insofar as it pertains to the right to counsel during a confrontation with the victim prior to being formally charged with the crime. It does not

presently exist under Federal or Indiana law. *See Kirby, supra; Snipes* v. *State* (1973), Ind. App., 298 N.E.2d 503.

The other aspect of this issue, the allegedly impermissibly suggestive identification of the defendant, is argued by Smith as being contrary to the holding in *Stovall* v. *Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1197, 87 S.Ct. 1967. Justice DeBruler speaking for our Supreme Court in *Dillard, supra,* stated:

> "The test in *Stovall* is, looking at the totality of the circumstances, whether 'the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification' that he was denied due process of law under the Fourteenth Amendment. 388 U.S. at 302, 87 S.Ct. at 1972.
>
> We believe the *Stovall* test focuses attention on two different sets of facts: (1) The facts bearing on whether the confrontation was conducted in such a fashion as to lead the witness to make a mistaken identification, e.g., how the police asked the witness to attempt the identification, what the witness thought he was doing, the displayed attitude of the police towards the suspect, etc. (2) The facts bearing on how good a chance the witness had to observe the perpetrator of the crime such that any suggestiveness in the conduct of the confrontation could be resisted by the witness and he could make an accurate decision as to whether the man presented was the man who committed the crime. These would include the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, opportunity to observe particular characteristics of the criminal, etc. See Parker v. State [(1970), 254 Ind. 593, 261 N.E.2d 562]." 274 N.E.2d at 389.

The facts which Smith argues as being in her favor under the first part of the foregoing test are that the confrontation took place in the early morning hours at the jail, that she was the only black woman present, and that Theis had been told prior to his arrival at the jail that the police had a suspect.

It is the State's position, inter alia, that Theis's in-court identification of Smith had a sufficient independent origin

from the alleged prejudicial pre-trial confrontation under the holding in *United States* v. *Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. In support thereof the State points to facts such as Theis had ample time to observe Smith under sufficient light at a distance of five feet or less. He also observed her from the front and side and watched her walk away. It is our opinion that these facts have the dual value of supporting the in-court identification by clear and convincing evidence and fulfilling the second portion of the *Stovall* test quoted from *Dillard, supra.*

It is our conclusion that under "totality of the circumstances" the identification was reliable and it was not error to overrule the motion to suppress.

## ISSUE 2

Smith next argues that the evidence was insufficient to show that Theis's money was taken by an act of violence or that Theis was put in fear by the incident. Either an act of violence *or* (our emphasis) putting a person in fear is an essential element of the crime of robbery as defined by IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956).

The essence of Smith's position in this regard is Theis had no reason to be in fear of a woman, shorter and smaller than he, who was plying her trade as a prostitute at the highway rest park.

The evidence revealed that it appeared to Theis that Smith had a knife and that he was frightened. We deem this sufficient. *Jackson* v. *State* (1971), 257 Ind. 589, 275 N.E.2d 538; *Lauer* v. *State* (1973), 156 Ind. App. 336, 296 N.E.2d 446.

## ISSUE 3

Smith's next assertion is that her sentence of 10 to 25 years is cruel and unusual punishment prohibited by Ind. Const., art 1, § 16 and its federal counterpart. Smith posits

that the length of the sentence is greater than other unrelated, but more serious, crimes.

The State correctly points out that it is the type of punishment, not the length, that may be cruel and unusual. *Kistler* v. *State* (1920), 190 Ind. 149, 129 N.E. 625.

Smith's arguments relating to this issue are of a similar vein as those advanced in *Hollars* v. *State* (1972), 259 Ind. 229, 286 N.E.2d 166, where Justice Prentice summarized our Supreme Court's position as:

> "These are primarily legislative considerations, and we are not at liberty to set aside a conviction and sentence because, on the record, they seem severe. *Blue* v. *State* (1946), 224 Ind. 394, 67 N.E.2d 377; *Mellot* v. *State* (1942), 219 Ind. 646, 40 N.E.2d 655.
>
> It is only when a criminal penalty is not graduated and proportioned to the nature of an offense, or where it is grossly and unquestionably excessive that this provision of the Constitution is intended to apply. *Weems* v. *United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. Such is not the case here.
>
> The law imposes upon us duties that are often painful of execution. There are areas wherein we have great powers and discretion, others where we have none, and we have not been invested with the authority to reverse judgments of the lower court out of considerations urged in this appeal." 286 N.E.2d at 170. *See also McHaney* v. *State* (1972), 153 Ind. App. 590, 288 N.E.2d 284.

### ISSUE 4

Smith urges error in the admission, over her objection, of testimony relating to the activities of Moore and Gibson in the evening prior to the early morning incident at the rest park. Johnson testified that he drove to a department store on the south side of Indianapolis. Moore and Gibson went into the store and returned a few minutes later carrying two radios in boxes. The four then drove to a furniture store on the west side. Moore and Gibson carried the two boxes inside the store and returned without them.

Smith says that this testimony was to infer a theft on the part of Moore and Gibson and the subsequent fencing of the items. As such it was irrelevant and prejudicial continues Smith. Smith relies upon authorities which involve the admissibility of evidence regarding the defendant's previous criminal activities. In this case the complained of evidence concerned the conduct of persons other than the defendant. Assuming that the testimony did show criminal activities on their part (which the State seriously contests) we believe it to be harmless error as defined in *Dillard* v. *State, supra,* and the applicable authorities cited therein. The facts of this case, as set out elsewhere in the opinion, show independent evidence of guilt of the offense with which Smith was charged. See *Hamp* v. *State* (1973), 156 Ind. App. 104, 294 N.E.2d 817.

### ISSUE 5

Smith's next argument is directed to alleged error in the admission of a knife handle into evidence.

Johnson testified that when Trooper Allen stopped the Mustang he heard a metallic object drop from his car onto the concrete. The next day while cleaning the Mustang he found a knife handle. He placed it on the car window ledge where it remained until given to the police at the hearing on the motion to suppress several weeks later. Trooper Garland had found half of a slab handled knife the next day at the rest park.

Smith says there is not sufficient connection between the exhibit and Smith, nor was there sufficient evidence as to the whereabouts of the exhibit between the robbery and the time it came into police possession.

First, we note that chain of custody need only be shown from the time the exhibit came into the State's possession. *Zupp* v. *State* (1972), 258 Ind. 625, 283 N.E.2d 540, citing *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652. Smith's arguments about the prior

whereabouts of the exhibits appear to be directed towards the weight, not the admissibility to be given the exhibit. Additionally, Johnson's testimony about hearing a metal object drop, Theis's testimony about seeing a metal object, which he thought to be a knife, in Smith's hand, and Trooper Garland finding part of a knife at the scene of the crime, all combine to form a sufficient connection between Smith and the exhibit. We conclude the exhibit was not erroneously admitted.

## ISSUE 6

Smith objected to these questions asked of Theis:

"Q. Have you ever been robbed before by anyone with a knife?"

"Q. I'll ask you now the defendant sitting next to Mr. Obremskey the one who stole from you $46 on December 29th, 1972?"

The basis of Smith's objections is that the questions were leading and called for a legal conclusion.

(Smith also argues that certain questions asked of Johnson were objectionable on the same grounds. We shall combine both questions for discussion.)

We are of the opinion that the overruling of Smith's objections was not reversible error. Firstly, the trial judge is in charge of the questioning and the control thereof is in his discretion. *Bayer* v. *State* (1973), 158 Ind. App. 531, 303 N.E.2d 678. It has not been demonstrated that the trial judge's rulings abused that discretion. Secondly, if it was error to admit the elicited testimony, we believe it to be harmless for the reasons heretofore discussed in Issue 4.

## ISSUE 7

Smith next urges error in the testimony of Trooper Allen regarding conversations between Smith and Allen prior to his giving her the Miranda warning. After stopping the Mustang, Allen asked Smith if she had a knife. She said no. This testimony was not objected to and any error attributable

thereto is waived. *McMinoway* v. *State* (1973), 260 Ind. 241, 294 N.E.2d 803.

Allen then testified that he later asked the same question of Smith and received an affirmative answer. Smith's objection to this testimony was sustained. However, she urges error in the trial court's failure to strike the testimony and not admonishing the jury to disregard what they heard. Smith did not move for either action by the trial judge. The jury did receive an instruction at the conclusion of the trial to not consider any evidence to which an objection had been sustained. In the absence of Smith's request for admonishment and striking of testimony we believe this instruction adequate in curing prejudice, if any, resulting from the testimony.

## ISSUE 8

Smith contends that the trial court erred in refusing to allow cross-examination of Sheriff Allen, Trooper Garland, and witness Theis as to their knowledge of prostitution in interstate highway rest parks.

Smith's theory of the case was that she approached Theis only to engage in her admitted occupation of prostitution and that Theis as an experienced truck driver, knowing that rest parks were frequently used for this purpose, realized her intentions and had no reason to be put in fear by her actions. To support this theory, Smith attempted to cross-examine Theis, Garland and Allen as to their knowledge of and experience with prostitutes in highway rest parks. The trial court sustained objections to these questions asked of Allen and Garland, but allowed Theis to testify that he knew prostitutes operated in rest parks and that he assumed Smith was a prostitute when she approached him.

Smith contends that these rulings by the trial judge prevented her from fully presenting her defense and thus denied her a fair trial. We do not agree.

The scope of cross-examination is within the sound discretion of the trial court. *Rariden* v. *State* (1961), 242 Ind. 689, 177 N.E.2d 736. Only a clear abuse of such discretion or obvious error warrants a reversal of the trial court's ruling on this matter. *Pinkston* v. *State* (1972), 258 Ind. 672, 284 N.E.2d 767. Since Theis was allowed to testify as to his knowledge of prostitution, the information sought from Garland and Allen would be unnecessarily repetitive. *Pinkston, supra.* We see no abuse or error in the trial court's ruling.

## ISSUE 9

Smith contends that prejudicial error was committed when the prosecutor called Sheriff Allen to testify when it was obvious his testimony was inadmissible.

Sheriff Allen testified that Moore had $57.00 in his possession when he was arrested. Allen said he had kept $46.00 of that money, consisting of a twenty, two tens, a five and a one dollar. When the prosecutor offered these bills as evidence, Smith objected on the ground that no connection had been shown between this money, the crime, and herself. The objection was sustained and the evidence was not admitted. The judge instructed the jury not to consider any evidence to which an objection was sustained.

Smith contends that the prosecutor knew this evidence would be inadmissible and offered it only for the purpose of prejudicing the jury against her.

The same contention was raised in *Wright* v. *State* (1972), 259 Ind. 197, 285 N.E.2d 650, in which the court held:

"The fact that the judge later ruled the evidence inadmissible because not sufficiently connected to the incident does not indicate any purposeful attempt by the prosecutor to prejudice appellant's case. It was certainly not patently obvious that the exhibits would be held inadmissible. Under the circumstances of this case, we do not feel the prosecutor was guilty of misconduct for there is

certainly no evidence that bad faith prompted his actions." 285 N.E.2d at 653.

In addition, the court stated that any harm to defendant was cured when the judge instructed the jury not to consider any evidence ruled inadmissible. In accord with *Wright,* we hold that the prosecutor's actions did not constitute reversible error.

## ISSUE 10

Smith contends that the trial court erred in overruling her objections to questions asked her on cross-examination. The prosecuting attorney, over Smith's objections, cross-examined Smith as to her manner of engaging in prostitution and the activities of her companions on the day of the robbery. Smith contends that these questions had nothing to do with the facts or circumstances of the crime charged and tended to prejudice the jury against her.

The questions were not improper. On direct examination, Smith was questioned about her activities as a prostitute. The subject having been opened up on direct, the cross-examiner had the right to explore any and all phases of that general subject. *Ballard* v. *State* (1974), Ind. App., 309 N.E.2d 817.

With regard to the questions concerning the activities of her companions, the admissibility of that evidence was discussed previously under Issue 4.

## ISSUE 11

Finally, Smith argues that the trial judge erred in giving final instruction no. 6. Her argument is based on *Hitch* v. *State* (1972), 259 Ind. 1, 284 N.E.2d 783, which held a tendered instruction erroneous because it instructed the jury that it was the *exclusive* judge of the law. Instruction 6 reads as follows:

"In this case you are the judges of the weight of the evidence and have the exclusive right to determine what fact or facts have or have not been proven; you are also the

judges of the credibility of the witnesses. You are likewise the judges of the law. It is the duty of the Court to instruct you as to what the law is governing this case, but the instructions of the Court are not necessarily binding upon you. You have the right to determine the law to be different from what the Court instructs you that it is, if the Court is in error as to what the law is, but you have no authority to determine the law to be different from what it actually is. The instructions given you are for your information and guidance upon the questions involved in the case, and it is your duty to give such instructions such consideration and respect as you may deem them entitled to at your hands."

The instruction does not tell the jury that it is the *exclusive* judge of the law, but only that they are judges of the law. This is a proper instruction in accord with *Hitch* v. *State*, *supra*.

Smith's arguments regarding final instruction 3 and the refusal of the trial judge to accept other tendered instructions are deemed waived for failure to cite supporting authority. Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7).

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 312 N.E.2d 896.