Josefino C. AGUILAR, M.D., Appellant (Defendant Below),

and

Walter Raymond White, Non-Appealing Defendant,

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–579A163.

Court of Appeals of Indiana, Second District.

Feb. 25, 1981.

Rehearing Denied April 1, 1981.

James W. Bradford, Christ, Hadler, Brothers & Bradford, Indianapolis, for appellant Josefino C. Aguilar, M.D.

Theodore L. Sendaki, Linley E. Pearson, Attys. Gen., Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Justice.

Aguilar appeals from a final judgment finding him in direct contempt.[1] Two issues have been presented for review:

1. Whether the trial court erred in ordering Aguilar to answer the questions propounded; and

2. Whether the direct contempt judgment is invalid because the trial court failed to comply with I.C. 34–4–7–7.

We affirm.

## I.

The facts most favorable to the judgment are as follows: At the time of his contempt citation Aguilar, a physician licensed to practice in the State of Indiana, was employed as a pathologist at Wishard Memorial Hospital in Indianapolis. He also served as a Deputy Coroner for Marion County. In the latter capacity, Aguilar was asked to autopsy and determine the cause or causes of death of two alleged homicide victims. When called as a witness at the subsequent multiple murder trial, Aguilar refused to answer a number of questions:

"Q. Would you have an opinion as to what caused the wounds you have described to [one of the victims]?

A. I would respectfully refuse to answer that question, because it's beyond my capacity as a witness in this particular case."

* * * * * *

"Q. During the course of your examination, did you form an opinion, to a reasonable degree of medical certainty, as to what had caused those wounds.

. . . . .

A. Yes.

. . . . .

Q. What is that opinion?

A. I respectfully refuse to make that opinion."

* * * * * *

"Q. What was the blood alcohol of [one of the victims], what percent?

. . . . .

A. The blood alcohol level ... is .24 percent.

Q. What about stomach content of [this victim]?

A. 386 milligrams per deciliter.

Q. What does that mean, doctor?

. . . . .

A. _ _ _ _ _ I refuse to answer the question, Your Honor."

* * * * * *

"Q. Have you ever autopsied anybody, where the cause of death was alcohol?

A. Yes, I have.

Q. What was that percentage of blood alcohol?

A. Oh, they range from about, four percent and, up.

Q. Four percent and, up?

A. Umhum.

Q. Do you have an opinion, as to a reasonable degree of medical certainty, as to whether or [not] four percent blood alcohol can kill somebody, in and, of itself?

A. Yes.

Q. Can it?

. . . . .

A. I don't want to give any opinion regarding that question.

Q. You don't?

A. I refuse to give an opinion regarding that question."

* * * * * *

[1] I.C. 34–4–7–2 (Burns Code Ed. 1973) provides:

"Direct—Refusing to testify—Demeanor on witness stand.—Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; or who, being required by any court to be sworn in any such trial or proceeding, shall refuse to take an oath or affirmation therein; or who, while upon the witness stand, shall purposely so demean himself, as to retard or disturb the proceeding thereof, shall be deemed guilty of a direct contempt thereof."

"Q. Do you have an opinion, to a reasonable degree of medical certainty as to whether a person's judgment would be affected at .24 blood alcohol?

A. Yes.

Q. What is that opinion?

A. I refuse to answer the question.

Q. Why do you refuse to answer?

A. Because as I said before, I am here as just a factual witness, let an expert witness give you an opinion.

Q. Well, I didn't call you as a witness, and, I don't understand why you won't answer me, you're an expert . . . ."

The next day Aguilar was recalled to the stand. When questioned by the Court he again refused to answer, even after being ordered to do so. The reason for this refusal, aside from Aguilar's contention that he was not subpoenaed as an expert witness, was discovered when Aguilar was given an opportunity to purge himself of contempt:

"Q. What is your reason for refusing to testify?

A. My reason not to testify as an expert witness from hereon in, is this. The Prosecutor's Office, time and, time again, refuse to give me, the courtesy that they would give an ordinary expert witness, they refuse to give that to me, I don't understand this.

Q. What courtesy are you talking about?

A. The courtesy of having to ask me whether or not I will be available at such and, such a time, the courtesy to inform me that a case had been discontinued, or a case had been, had gone to trial, and, the person had pleaded guilty, they have refused to give me this type of courtesy.

Q. What has that got to do with your refusing to testify in Court, though?

A. Well, Your Honor, when I come to Court since 1975, I have been doing this, I have been coming to Court as a factual witness, but, as a form of courtesy I extended the Prosecutor's Office my expertise on the subject, which was never being given credit. I didn't have to do that, but, I did it as a favor, because I want to do, I think the citizenry of the State of Indiana deserve this sort of thing from me, but, this was never, you know, nobody give a 'damn' about this thing, Your Honor. So, now, I'm just acting on my behalf, as just a factual witness . . . ."

Because of Aguilar's refusal to obey the court and his subsequent citation for contempt, the trial court declared a mistrial in the murder case and dismissed the jury.

## A.

▮ Aguilar first contends that he properly refused to answer the questions because they were not material or relevant to the issues at trial. He did not premise his refusal at trial to answer upon grounds of irrelevancy or immateriality. It is questionable, therefore, whether he has preserved any allegation of error in this regard. In any event, however, it may be argued that by virtue of I.C. 34–1–14–12 relevance and materiality are always issuable matters concerning the compulsion upon a witness to give expert testimony. The statute provides in part:

"A witness who is an expert . . . may be compelled to appear and testify . . . to an opinion, as such expert, in relation to any matter, whenever such opinion is material evidence relevant to an issue on trial . . . ."

Nevertheless, Aguilar has failed to cite any authority, and our research has disclosed none, which precludes a contempt finding solely because the witness unilaterally determines the question to be immaterial or irrelevant. Such rulings constitute questions of law and lie within the sound discretion of the trial court. *See Indiana National Corp. v. FACO, Inc.* (4th Dist. 1980) Ind. App., 400 N.E.2d 202, 206; *Spears v. Aylor* (3d Dist. 1974) 162 Ind.App. 340, 342, 319 N.E.2d 639, 641. Furthermore, it is well

established that control of the examination of a witness lies with the trial court, not with the witness. *Smith v. State* (1st Dist. 1974) 160 Ind.App. 622, 632, 312 N.E.2d 896, 902.

Even accepting Aguilar's contention that the only issue before the court at the time he was found in contempt was the murder defendant's sanity, the questions could well have encompassed matters relevant to such a determination. A finding of irrelevance on our part would in fact be mere speculation since the line or lines of questioning were not, and could not be, developed beyond the point at which Aguilar withheld his participation. It is not insignificant in this regard that the questions concerning the victims' blood and stomach alcohol content were propounded by the defense counsel, who must have considered the questions relevant to the defense of his client.

### B.

■ Aguilar next argues that he could not answer the questions because they were beyond his expertise as a subpoenaed witness. It is apparently his assertion that he could not answer as to cause of death by shotgun because no ballistic test had been performed on the alleged murder weapon and that therefore he was not qualified to answer as a forensic pathologist as to the instrument inflicting the wounds but rather must have confined his testimony only as to pathology as to cause of death, i.e., the wounds themselves. While we do not fully appreciate the precise nature of Aguilar's argument in this regard, suffice it to say that Aguilar has cited no authority to support this distinction and we think no such distinction exists. I.C. 34–1–14–12 specifically empowers a court to compel an expert to testify as to his opinion. There is no differentiation drawn between an expert acting in one role as opposed to another. Further, Aguilar admitted having the knowledge to answer the type of questions propounded, and admitted having done so on several previous occasions when, as here, he was testifying in his capacity as a Deputy Coroner. We think it clear that Aguilar

has failed to carry his burden of showing a legitimate inability to comply with the trial court's order to answer the questions. *See generally State ex rel. Thrasher v. Hayes* (1st Dist. 1978) Ind.App., 378 N.E.2d 924, 929.

### C.

■ Aguilar's last argument is that there is insufficient evidence to sustain his direct contempt conviction. This argument is meritless. The record clearly shows Aguilar refused to answer several questions propounded by the prosecutor, the defense counsel, and the trial court. As indicated in Section A, *supra*, these questions were within the scope of the trial at which Aguilar was testifying. Aguilar's refusal to answer was therefore within the conduct proscribed by I.C. 34–4–7–2. *See Jacobsen v. State* (3d Dist. 1979) Ind.App., 384 N.E.2d 1041, 1044. As expressed by the trial court a multiple murder trial cannot be allowed to become a circus because a witness decides he may or may not testify. It is primarily for this reason—the need to ensure orderly and just proceedings—that the contempt power is considered essential to the effective exercise of judicial authority. *See La Grange v. State* (1958) 238 Ind. 689, 153 N.E.2d 593; *Boggs v. State* (1st Dist. 1979) Ind.App., 386 N.E.2d 992, 994–95. We find the evidence sufficient to support Aguilar's contempt conviction.

### II.

■ The second issue is whether the direct contempt judgment is invalid because the trial court failed to comply with I.C. 34–4–7–7 (Burns Code Ed. 1973), which provides in part:

"When any person shall be arraigned for a direct contempt, in any court of record of this state, no affidavit, charge in writing, or complaint shall be required to be filed against him; but the court shall distinctly state the act, words, signs or gestures, or other conduct of the defendant which is alleged to constitute such contempt; and such statement shall be reduced to writing . . . and the same

shall be substantially set forth in the order of the court on the same, together with any statement made in explanation, extenuation, or denial thereof, which the defendant may make in response thereto . . . ."

The requirement of a writing in this otherwise summary procedure serves a dual purpose. First, it assists the contemnor in preparing an appeal by providing a concise record of why he was found in contempt. Secondly, it helps to prevent arbitrary action by the trial court. Observance of the requirement is vital when the trial court's written statement is all that reveals the contumacious conduct to the reviewing court, but is of less importance when the nature of the conduct is easily discernible from the record. *Skolnick v. State* (3d Dist. 1979) Ind.App., 388 N.E.2d 1156, 1163–64, *cert. denied* (1980) 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323.

Although the trial court did not follow the letter of the statute, the record shows that the spirit of the statute was fully complied with. On the second day of his testimony Aguilar acknowledged that he had refused to answer several questions the previous day, and again refused to answer when ordered by the trial court to do so. The trial court also gave Aguilar an opportunity to purge himself of contempt "either by answering the question, giving your reason for not answering the question, or presenting whatever you might desire in defense of your position." Further, an examination of Aguilar's explanation and subsequent discourse with the trial court shows that he understood and appreciated the reasons for his contempt conviction. It is also apparent that the lack of a written statement posed no problems for Aguilar in preparing this appeal. In short, Aguilar's refusal to answer is apparent from the record and he has shown no harm caused by the absence of a written statement describing his refusal. Therefore, we hold that the trial court's technical failure to follow I.C. 34–4–7–7 does not require reversal of Agui-

lar's contempt conviction. *See Skolnick v. State, supra,* 388 N.E.2d at 1164.

Affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.