RANDAL WARE *v.* STATE OF INDIANA.

[No. 172A26.   Filed June 27, 1972.]

David F. McNamar, Steers, Klee, Sullivan & LeMay, of Indianapolis, for appellant.

Theodore L. Sendak, Attorney General, A. Frank Gleaves, III, Deputy Attorney General, of Indianapolis, for appellee.

WHITE, J.—This appeal presents three issues:

1. Whether there was sufficient evidence to sustain defendant's conviction.
2. Whether the identification confrontation denied defendant his constitutional rights.
3. Whether defendant was denied his constitutional right to representation by counsel.

Defendant--appellant (Ware) was tried without a jury on an affidavit (information) charging him with first degree burglary. Found guilty as charged, he was sentenced, pursuant to Ind. Ann. Stat. § 10-701 (Burns 1956 Repl.), to the Indiana Reformatory for an indeterminate period of not less than ten years nor more than twenty years.[1] Some eighteen days after being sentenced he filed, *pro se,* a long-hand motion for new trial, which was verified by his own oath, charging that he was denied his constitutional right to counsel in that he did not see his court-appointed Public Defender (not his attorney of record here) prior to the day of his trial and defendant had no time to talk to him and "no way to relate my case to him before my trial". Ware was confined to the Marion County jail and his defender did not visit him. Forty-

---

1. Appellant asserts that this court "has jurisdiction herein pursuant to the provisions of A.P. 4(A)(7), Indiana Rules of Appellate Procedure. . . ." The State agrees. Not mentioned is Article 7, § 4, Indiana Constitution (effective January 1, 1972) which provides that appeals from a judgment imposing a sentence of . . . imprisonment for a term greater than ten years shall be taken directly to the Supreme Court." Also without mention are *Moore* v. *State* (1972), 257 Ind. 584, 28 Ind. Dec. 669, 276 N. E. 2d 840, and *Boyd* v. *State* (1971), 256 Ind. 22, 28 Ind. Dec. 40, 275 N. E. 2d 797, both of which hold that an indeterminate sentence is for the maximum time prescribed by the statute.

Although we do not agree with the Supreme Court's decision to give us jurisdiction of all appeals in criminal cases except those "imposing . . . a minimum sentence of greater than ten [10] years", we are bound by it. ". . . [I]t was the law as the Supreme Court construed and held it to be which invested the Appellate Court with jurisdiction. . . . [The Supreme Court] is. the highest judicial tribunal . . . and is fully invested under the organic law with the right and power to determine, not only its own jurisdiction, but also . . . the jurisdiction of all other judicial tribunals within the State. . . . [I]t determines what is the law of the land . . . and all courts within the State . . . should yield obedience thereto." *Pittsburgh, etc. R. Co.* v. *Peck* (1909), 172 Ind. 562, 577.

two days after Ware filed his *pro se* motion his Public Defender filed a motion to correct errors (on the sixtieth day after sentencing). The defender's motion prayed for a new trial on the grounds that the finding of guilt was not sustained by sufficient evidence and was contrary to law. The memorandum appended thereto asserted there was no proof of intent to commit a felony and that "defendant's rights were not strictly observed" in the "on the scene confrontation between the defendant and the alleged occupant of the dwelling." No mention was made in that motion of Ware's *pro se* contention of inadequate representation.

On the date of its filing by the Public Defender the motion to correct errors was overruled and Ware's present attorney was appointed to prosecute this appeal. Neither a denial of the allegations of the verified *pro se* motion nor any other response thereto appears at any place in the record. Nor does the record show that it was ever overruled, sustained, or stricken.

.The evidence most favorable to the State supports this version of the facts: On the morning of May 14, 1971, Mary Jane Myers observed defendant and another man ringing the bell next door. Mrs. Myers saw the two men then come to her own rear door and ring the bell. Mrs. Myers did not answer the door, in hope that the two men would leave. Instead, she saw them remove the moulding around the glass of the door, remove the glass, and enter the house. Mrs. Myers phoned the police as the men were removing the moulding and glass.

The men then went to the bedroom, where she saw them moving furniture and placing it on the bed. At this point Mrs. Myers ran from the house and waited for the police to arrive.

Within minutes the police drove up and as they did so defendant and the other man ran from Mrs. Myers' yard. The police chased them on foot. Defendant was ultimately found hiding in a garage. The two men were returned immediately

to the scene of the break-in, where Mrs. Myers identified them as the two men who entered her house.

When Mrs. Myers re-entered her house she found that three wigs were missing. Police officers later found the wigs on the ground outside the Myers' house. Mrs. Myers testified that she had not given defendant or his companion permission to enter her house or exercise control over her property.

## I.

The foundation of defendant's argument that the evidence was insufficient to sustain his conviction is his contention that there was no evidence of intent to commit a felony[2] in that there was no evidence that he committed or attempted to commit a felony after gaining entrance to the house. He says that the evidence does not show how Mrs. Myers' wigs got outside the house and there was no evidence that they had any value. In support of his "value" argument appellant cites *Burrows* v. *State* (1894), 137 Ind. 474, 475, 37 N. E. 271, which holds "that without proof of the value of stolen property there can be no conviction for larceny." That case further holds that "[i]t is essential to prove the value of the property alleged to have been stolen, in order to determine the grade of the offense and the penalty to be imposed".[3] No such reason

2.  So far as is pertinent here, the statute defines First Degree Burglary as: "Whoever breaks and enters into any dwelling house or other place of human habitation *with intent to commit any felony* therein . . . shall be guilty of burglary in the first degree. . . ." (Italics added.) Ind. Ann. Stat. § 10-701 (Burns 1956 Repl.).

The Affidavit by which defendant was charged alleged that he broke and entered "with the intent . . . to unlawfully and feloniously and knowingly obtain and exert unauthorized control over property of Mary J. Myers and to deprive . . . [her] permanently of the use and benefit of said property. . . ." Which is to say that it charged him with *intent* to commit the crime of theft, which is defined in Ind. Ann. Stat. § 10-3030 (Burns 1971 Supp.) in the terms stated in the Affidavit.

3.  At that time (1893) larceny was of two grades: 1) Petit larceny for which the penalty was imprisonment for one to three years, fine up to $500.00, and disfranchisement for any determined period, or imprisonment in the county jail up to one year and fine and imprisonment;

exists when the charge is breaking and entering with intent to commit theft. The value of the goods intended to be stolen is not an element of the crime and is no aid in establishing the degree of the crime. *Pacelli* v. *State* (1929), 201 Ind. 455, 458, 166 N. E. 649; *Suter* v. *State* (1949), 227 Ind. 648, 653, 88 N. E. 2d 386. Nor is it necessary that anything actually be stolen. *Ibid.*

In support of his contention that there is insufficient evidence of intent to commit theft appellant cites and quotes *Easton* v. *State* (1967), 248 Ind. 338, 343, 228 N. E. 2d 6, in which a burglary conviction was reversed on that ground. What the Supreme Court said in rejecting a similar argument in *Davis* v. *State* (1968), 251 Ind. 133, 136, 239 N. E. 2d 601, is pertinent here:

> "In *Easton, supra,* the defendant was discovered in another's apartment watching television. The door lock had been broken and a record player was found unplugged, with records stacked upon it. The defendant left leisurely, offering to pay for the lock. In holding that these facts were insufficient to sustain a conviction requiring proof of breaking and entering with intent to commit a felony, this Court said at page 12 of 228 N. E. 2d:
>
> > 'The intent being a primary element of the offense . . . we are of the opinion that such an issuable fact may not be inferred from proof *alone* of the breaking and entering.'
>
> "In reaching the decision, the Court emphasized the operative facts involved: that the defendant knew the owner of the apartment, that he was sitting watching television, that he left leisurely and that he made no attempt to flee or hide.
>
> "A recent case, *Kondrup* v. *State* (1968), 250 Ind. 320, 235 N. E. 2d 703, . . . stated that in light of the decision in

and, 2) grand larceny for which the penalty was imprisonment for one to fourteen years, a fine not exceeding double the value of the stolen goods, and disfranchisement for any determinate period. Acts 1881, ch. 37, §§ 32, 33, p. 180. The value of the property taken determined whether the larceny was "petit" or "grand". The breaking point was $25.00.

At the present time most thefts of property "less than one hundred dollars in value" carry lower penalties than do thefts of $100.00 or more. Ind. Ann. Stat. § 10-3039 (Burns 1971 Supp.).

*Easton, supra,* 'we must look to the evidence other than that concerning the breaking and entering alone to determine if there was sufficient evidence to show an intent to commit a felony.'

"In examining such evidence in the instant case, we find that the following facts are sufficient to sustain the jury's finding that the Appellant entered with intent to commit a felony; that he entered the Reynolds' home without their consent; that he was seen 'going through something;' and that a 'clinking' sound was heard in the hallway where coins were later found. Further, Mr. Reynolds' wallet was taken from his trousers that evening and later found and returned to him. The evidence also reveals that upon being discovered, the Appellant jumped through the kitchen window and in so doing suffered several lacerations.

"An old case involving a strikingly similar situation found that evidence such as outlined above was sufficient to sustain a conviction requiring an attempt to steal. In that case, *Burrows* v. *State* (1882), 84 Ind. 529, a man was awakened by a noise made by the defendant, who was in his bedroom, and upon being discovered, the defendant escaped through an open window. It was discovered that the victim's trousers, containing nothing, had been taken during this period and were later found and returned to him. This Court said at page 533 of 84 Ind.:

'We are of the opinion . . . that the facts and circumstances were abundantly sufficient, . . . to authorize the jury to find that the appellant then and there attempted to commit (larceny).'

"In another similar case, the defendant was discovered going through the drawers of a bookcase and then attempted to escape by the back way of the building. This Court found these facts sufficient to sustain a finding that the defendant entered and attempted to steal, which offense also includes an intent to steal. *Block* v. *State* (1903), 161 Ind. 276.

"It is well established that the issue of intent is for the jury to determine. See: *Kondrup* v. *State, supra; Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537; *Bleiweiss* v. *State* (1919), 188 Ind. 184, 122 N. E. 577. Further, if two reasonable inferences arise from circumstantial evidence—one of guilt and one of innocence —this Court will not determine which inference controls, that being within the province of the jury. *Shutt* v. *State* (1954), 233 Ind. 169, 117 N. E. 2d 892.

"The jury can make a finding of intent based on the surrounding circumstances of the case, *especially where,* as in the case at bar, *the defendant was seen in or leaving the premises and property from the premises was later found elsewhere.* [Our italics]. *Heacock* v. *State* (1968), 249 Ind. 453, 233 N. E. 2d 179; *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N. E. 2d 866."

Not only were there no contra-indications of intent to steal present in this case (such as in *Easton* where defendant knew the owner and was watching television when discovered and left leisurely), but in this case there were also the following circumstances, in addition to the breaking and entering, which are sufficient to sustain a reasonable inference of intent to commit theft: Two men, one of whom Mrs. Myers testified was the defendant Ware, were seen in the house moving furniture so as to gain entry to the bedroom; Mrs. Myers' wigs, which had been in the bedroom, were missing after the departure of the two men; defendant and the other man were seen fleeing from Mrs. Myers' residence; defendant was found hiding in a nearby garage, and the missing wigs were located outside the Myers' home.

The evidence was sufficient on the issue of intent to commit theft.

## II.

Defendant Ware also contends that rights secured to him by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States were violated when Mrs. Myers was permitted to testify that he was one of the men she saw in her house. That argument rests, in the main, on his assertion that the Supreme Court of Indiana is in error in holding that in the hase of an "on-the-scene" confrontation conducted within a reasonably short period of time after the commission of a crime for the purpose of identifying a suspect counsel need not be present. *Parker* v. *State* (1970), 254 Ind. 593, 261 N. E. 2d 562; *McPhearson*

v. *State* (1970), 253 Ind. 254, 253 N. E. 2d 226; *Lewis* v. *State* (1970), 252 Ind. 454, 250 N. E. 2d 358; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N. E. 2d 387. However, it is our duty to accept the law as announced by the Supreme Court.[4] Counsel's attempt to show that this on-the-scene confrontation cannot pass "the *Stovall*[5] test" as explained by Mr. Justice DeBruler in *Dillard* v. *State, supra* (274 N. E. 2d at 389) must therefore fail. A much stronger argument to the same effect was rejected in that same *Dillard* opinion.

## III.

The pertinent allegations of defendant Ware's *pro se* motion (verified by Ware's oath) are:

"I, Randall L. Ware, would like to obtain a new trial on the *grounds at improper conciltation,* [sic]. [Original emphasis]. At the time I wasn't informed of my rights by the arresting officer or by my attorney. I hadn't seen my Attorney prior to August 6, 1971. I had no way to relate my case to him before my trial, which was the above date. . . . My Attorney never call me out to talk to me about my case until the 6 of August. I had no time to talk to him about my case."

The filing of that motion on September 7, 1971, which was seventeen days after the defendant was sentenced by the *pro tem* judge who tried him, is shown by an order book entry which recites that the regular judge was presiding. The entry concludes thus:

"Hearing thereon set for September 17, 1971, at 9:30 A.M. Sheriff ordered to produce the Defendant Ware from the Indiana Reformatory."

The record also contains a photo copy of an order signed by the regular judge directing the Superintendent of the Indiana

---

4. *Pittsburg, etc. R. Co.* v. *Peck, supra.* See n. 1.
5. *Stovall* v. *Deno* (1967), 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1178.

State Reformatory to produce Ware for the hearing. The next entry, on September 17, 1971, before the *pro tem* judge who tried and sentenced Ware, recites *in toto:*

> "Hearing on Motion for New Trial continued. Sheriff ordered to return Defendant to Reformatory."

That entry is followed by an order of return directed to the Sheriff and signed by the trial *pro tem* as "Presiding Judge".

The next and last entry (except for the filing of the transcript of the evidence) was made October 19, 1971 (on the sixtieth day after sentencing), before the trial *pro tem* as "Presiding Judge". It recites the filing of the motion to correct errors signed by the Public Defender, its overruling, the appointment of present counsel of record to prosecute this appeal, and his filing of the praecipe for the record.

The record states no reason for continuing the hearing on the *pro se* motion for new trial and makes no further reference to it. Nor does the Public Defender's motion to correct errors make any reference to the *pro se* motion or to the matters alleged therein. Why there was never a hearing and ruling on that motion, the record does not disclose. But whatever may be the reason for that omission, it should be rectified. We therefore remand to give the trial court an opportunity to hear and rule on defendant's charges.

On remand new trial-level counsel should be appointed and he should be given adequate opportunity to amend or supplement the *pro se* motion after proper consultation with the defendant. The amended motion, together with supporting affidavits, should, of course, be properly served on the former trial counsel as well as the State and an opportunity given each to file counter affidavits and reply affidavits in conformity with Criminal Rule 17. Whether additional evidence is

received must be left to the sound discretion of the trial court. If a new trial is granted the appeal will be dismissed.

Although the *pro se* motion is not a petition for post conviction relief under Post Conviction Remedy Rule 1 it does involve questions of fact *dehors* the record and in that respect resembles a Post Conviction Remedy petition (or the old petition for writ of error *coram nobis*) more than it resembles the usual motion to correct errors. For that reason, if the motion is overruled, specific findings of fact and conclusions of law would be an aid to review by this court. (See § 6, Rule PC 1.)

If the motion is overruled, the record of the proceedings on remand should be certified to this court not later than thirty days thereafter. Appellant's attorney should then have thirty days in which to file a supplemental brief, with thirty days to the state to answer and fifteen days to appellant to reply.

This cause is now remanded to the trial court for further proceedings consistent with the views herein expressed, pending which proceedings this Court retains jurisdiction of this appeal, suspending further consideration until the record of those proceedings is certified to it.

Remanded for further proceedings.

Buchanan, J. and Sullivan, J., concur.

NOTE.—Reported in 284 N. E. 2d 543.