DONALD LEE DEARMAN *v.* STATE OF INDIANA.

[No. 2-1172A104. Filed August 15, 1974. Rehearing denied September 19, 1974. Transfer denied December 9, 1974.]

*Marshall E. Williams,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

WHITE, J.—Defendant was tried by the court sitting without a jury on a three count affidavit charging (1) Robbery; (2) Inflicting Injury in Robbery; and (3) Carrying a Pistol Without a License. Found not guilty on counts two and three, he appeals from a ten-to-twenty-five year sentence imposed following conviction of the robbery charge. His appeal presents issues centered upon his allegations of (1) insufficiency of the evidence, and suppression of evidence by the prosecutor; (2) inadequacy of post-conviction representation by his court-appointed trial counsel and by counsel appointed to take this appeal.

We affirm.

I.

At the trial the only witness for the State was the alleged victim of the robbery. He testified that on February 21, 1972, between 9:30 and 10:00 P.M., defendant came up behind him with a pistol on an Indianapolis street and ordered him into

an alley. When the defendant asked for money the victim tried to talk him out of the robbery. Defendant became angry and impatient, knocked him down with the pistol, hit him several more times, and took his billfold containing approximately twenty dollars. There was a lot of light, he could see defendant clearly, and positively identified him in court, although he had never seen him before the robbery nor thereafter until he saw him in court.

Defendant was the only defense witness. He denied having committed the robbery and said that at the time he was on Indiana Avenue with a friend, "Adelle Modley", until about 10:00 and then went to the Shalimar Tavern at 22nd and Central. He denied having seen the victim until he was already under arrest but said, "I may have on 22nd Street but I don't think I seen him, if he was around the Shalimar Tavern." On cross-examination he was "afraid" his friend Adelle Modley was not in court and that he could be home. He hadn't talked to him since being arrested.

Although only the victim testified for the State, it is readily apparent that his testimony constituted substantial evidence of probative value sufficient, if believed, to prove beyond a reasonable doubt every element of the crime of robbery. The victim here has a much better opportunity, over a much longer period, to observe his robber than in many other cases which also rest entirely on victim identification. His in-court identification is impervious to attack here. See *Hardin* v. *State* (1972), 153 Ind. App. 317, 287 N.E.2d 359, 32 Ind. Dec. 579. Even an impermissively suggestive pretrial showup, lineup, or confrontation, (not relied on to bolster the victim's in-court identification) would not have rendered the identification improper. *Johnson* v. *State* (1972), 257 Ind. 682, 278 N.E.2d 577, 581; *Wilson* v. *State* (1970), 253 Ind. 585, 589, 255 N.E.2d 817, 820.

Appellant's attack on the sufficiency of the evidence is both ingenious and eloquent but of no avail at the appellate level since it goes merely to the weight of the evidence, not to its

legal sufficiency. *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89, 16 Ind. Dec. 429, cert. den. 396 U.S. 821; *McGowan* v. *State* (1973), 156 Ind. App. 344, 296 N.E.2d 667, 36 Ind. Dec. 631; *McChristian* v. *State* (1974), 160 Ind. App. 442, 312 N.E.2d 531, 42 Ind. Dec. 380; *Ard* v. *State* (1974), 160 Ind. App. 438, 312 N.E.2d 512, 42 Ind. Dec. 386.

As summarized by counsel, appellant's contention is that:

"The prosecutor suppressed or withheld evidence concerning the prosecuting witness's pre-trial confrontation with the defendant. The prosecutor thereby avoided and failed to satisfy his burden of showing, by clear and convincing evidence, that the in-court identification was not the product of a suggestive pre-trial confrontation.

"The trial of defendant lacked fundamental fairness in that the prosecution presented no corroborating evidence, although it is apparent that, if defendant was guilty, there should have been some such evidence easily available. The trial, as presented, amounted to nothing more than a coin-toss as to which person the judge would believe."

The charge that the prosecutor suppressed evidence appears to be based solely on an admonition by the trial deputy prosecutor to the victim during direct examination at the trial as follows:

"Q. Have you seen this person [the robber] since then?
"A. Yes sir.
"Q. Where?
"A. I came—the detective called me—
"Q. Well, *let's not talk about that.* Where did you see him? [Our emphasis.]
"A. I seen him in court."

It is obvious that the deputy was merely attempting to avoid hearsay testimony (i.e., what the detective said) not responsive to his questions. His asking the witness not to talk about the detective having called the witness falls far short of constituting suppression of admissible evidence. Had the witness continued with whatever it was that he started to say, there is absolutely no indication that it would have been helpful to defendant; only that it would have been

hearsay. We see no misconduct or "suppression" in the admonition.

Asking, as appellant does, why the State did not show why the victim was asked to come to the court (presumably the Municipal Court) where he saw defendant for the first time after the robbery, or why there was no evidence about what became of the gun, or of the wallet, or of the twenty dollars, or why only one of five witnesses endorsed on the affidavit was called to testify, is argument which could have been of interest to the trial judge whose duty it was to weigh the evidence, but before appellate judges who have neither that duty nor that power, it is wasted. (See cases last above cited.)

## II.

Pursuant to Criminal Rule 11 the trial court at sentencing ascertained that defendant wished to have a motion to correct errors filed in his behalf and that he wished an attorney appointed to take an appeal if the motion were overruled. The public defender was instructed to, and did, file such a motion which was overruled. Appeal counsel was appointed. He examined the record and discovered a letter to the judge written by the defendant at the jail approximately a month after the sentencing. The letter charged that the public defender had not adequately represented defendant. His appeal counsel convinced the trial judge that *Ware* v. *State* (1972), 152 Ind. App. 582, 284 N.E.2d 543, appeared to require a hearing on the charge and a hearing was held. At that hearing appellate counsel acted as defendant's attorney. In his opening statement he said, *inter alia,*

> "The letter indicates matters dehors the record which, if true, would constitute grounds for a new trial. Would the failure of the appointed defender to subpoena witnesses and I think there is something in there about failing to prepare a defensive case. . . . Today I have found out from the Defendant, and his court-appointed counsel at trial that Defendant has given counsel an erroneous spelling of a so-called alibi witness. The correct name, spelling and ad-

·dress of the witness is found in the present new phone book which it will be my duty, I think, to contact and there may be a petition filed, to file a belated Motion for New Trial, as my ground of new evidence, but I see no reason why the court ought not to proceed as to the exception of that witness, as to the pro se motion."

The witnesses who testified at the hearing were all called by defendant. In the order of their appearance, they were William M. Bryant, a police officer; defendant; his trial public defender and defendant's girl friend, Carol McKay.

It was brought out at this hearing, by the public defender's testimony, that he was not present in court at defendant's arraignment when he was assigned to defendant. Shortly thereafter, however, he obtained copies of the three-count affidavit in this case, in which the victim was a man, and also the affidavit in another robbery charge in which the victim was a woman and which was alleged to have occurred on the same date. Both of these cases were set for trial at the same time and the same preparation was made for the defense of both cases. That preparation included three interviews by the defender with the defendant in the jail; a visit by the defender and his investigator to the tavern where defendant claimed to have been and where they interviewed the bartender in a vain effort to find alibi witnesses; the issuance of subpoenas to two alleged alibi witnesses, Officer Bryant and one Adelle "Modley". No address for "Modley" could be found, although the defender had several telephone conversations with defendant's girl friend, who was attempting to find him, and the subpoena was never served. Officer Bryant was served but telephoned the defender that he did not know defendant and was not in the tavern. The defender thereupon excused him from attendance at the trial lest his testimony be damaging to defendant.

When they came to court for trial, both defendant and defender expected the trial to be in the woman's case, but they found that the man's case, not the woman's case, was

to be tried. That made no difference since all the preparation possible had been made for both trials.

Officer Bryant's testimony at the post-conviction hearing was to the same effect as the public defender's testimony concerning their telephone conversation before the robbery trial. Girl friend McKay's testimony amplified the opening statement concerning the missing witness Adelle "Modley". She had picked up defendant's personal belongings at the jail after he was sentenced. In a partially used pack of cigarettes she found a card with the missing witness's name, "Marbley" not "Modley", and his telephone number written on it. She had telephoned that number the day of the hearing and had talked to Marbley's wife who said Marbley was gone and "[t]hat is why we couldn't get him down here today."

Defendant's testimony followed immediately after that of the first witness, Officer Bryant. Defendant said the officer was lying. He admitted giving his defender an incorrect spelling of witness Marbley's name and admitted talking to the defender three times in jail prior to the trial but said "we never discussed my case, nothing whatsoever". "He [the defender] said there was nothing he could do. He didn't know no more about the case than I do." If granted a new trial he would like to have the arresting officer and the investigating officer testify. He thought there was an unlawful arrest and their testimony "would have some bearing on the case". He would also like to have the testimony of Robert Hurt at whose house he had stayed a week before he was arrested and who could testify defendant had "never owned, possessed or carried a pistol while I was at his house". Adelle Marbley could testify to the same thing and also that "he was with me approximately up to 15 or 20 minutes before I was arrested."

His defender and his girl friend testified after defendant had testified. On re-direct examination the defender was reminded that on direct examination he had said "Sunset

Tavern" and was asked if defendant had not told him instead that he had been in the Oriental Tavern. Defender answered, "No, not that I know of." Defendant interrupted the next question by saying:

"How can you stand up there and lie about that? Somebody has got to tell the truth some time. Now which one of us is going to break this ice? Is you going to stand up there and lie on me all day? I wish I could tell you who is going to do that 25 years. That is what I am talking about; he ain't going to split it with me. He ain't going to do 12½ years."

At the conclusion of all the testimony defendant's appellate counsel asked, and was granted, leave to orally amend the *pro se* motion for new trial to allege that, because defendant could not correctly spell Adelle Marbley's name, Marbley's testimony, despite reasonable diligence, was not available at the trial. He also asked and was granted leave to support the *pro se* motion by affidavit of Adelle Marbley as soon as Marbley could be contacted. Asked if he desired any further hearing, counsel said:

*"Mr. Williams:* Judge, I see no need for further hearing. I think if Marbley makes an affidavit that he was an alibi witness I think defense is entitled to a new trial on grounds of newly-discovered evidence; if Marbley's affidavit does not hold up as an alibi witness—I will file it and let the court rule on the motion on that basis.

\* \* \*

"The Defendant will have no argument.

*"Court:* All right, we will make no ruling on the Motion awaiting your submission to the court of the affidavit that you intend to procure of Mr. Marbley."

The next entry in the case is of the filing, forty days later, of defendant's *pro se* verified motion to discharge his appellate counsel, alleging, in substance, that (a) counsel failed to make himself available with sound legal advice, (b) had only consulted with defendant for five minutes, and (c) had failed to locate "desired" witnesses and had expressed unwillingness to do so. The trial court thereupon entered an order that

said attorney "shall furnish the court with a verified report of his actions in behalf of defendant herein within five (5) days."

That report, after reciting all that had transpired in the case from the time of the attorney's appointment through the hearing (which this opinion has already detailed), continued as follows:

"5. Immediately following the hearing, counsel requested defendant's friend, Carol McKay, who had been the person who discovered the correct name of Marbley, to contact Marbley and ask him to call counsel for an appointment.

"6. On October 9, 1972, not having heard from Marbley, counsel contacted Carol McKay, who stated that she had talked to Marbley and he had told her that, 'he was not going to get involved and was not going to make any affidavits.' Counsel requested her to contact Marbley again and explain that, if his testimony would support the defendant's story, the defendant would most probably be granted a new trial. She agreed to do so.

"7. On October 11, 1972, counsel wrote Marbley. A copy of the letter is attached.

[The letter told Marbley of defendant's conviction and sentence, of counsel's appointment to take the appeal, and that defendant claimed Marbley was with him until 10:00 o'clock the evening of the alleged robbery. It said if Marbley could so swear defendant may be granted a new trial; if not, counsel is required to furnish the court an affidavit to that effect. Marbley was asked to contact counsel and threatened with "process to obtain your testimony" if he did not do so within a week.]

"8. On October 13, 1972, counsel telephoned Marbley's residence and a female voice advised that Marbley was not in. Counsel identified himself and the female voice stated that Marbley had received the letter, and that she would give him the message to call counsel.

"9. On or about October 16, 1972, counsel again telephoned Marbley's residence. The same female voice said Marbley was not in and that she would give him the message to call counsel.

"10. On or about October 18, 1972, counsel again tele-

phoned and was told by an operator that the number had been changed to an unlisted number.

"11. In the days following, counsel visited the defendant and told him that Marbley had refused to give an affidavit of alibi. Defendant asked counsel to contact defendant's half-brother, Warren Mitchell, and ask him to persuade Marbley. Counsel contacted Mitchell, who said he thought he could persuade Marbley to at least come in and talk to counsel, and made an appointment to bring Marbley in between 2:00 and 3:00 p.m. on November 1, 1972. Neither showed up.

"12. Thereafter, counsel's calls to Mitchell were not answered or not returned. Carol McKay said she would try to persuade Marbley again, but Marbley has not called counsel.

"13. On November 21, 1972, counsel filed a Petition for Extension of Time to file the transcript on appeal, asking for 45 days to complete the proceedings herein and include the transcript of same in the original record on appeal.

"14. Counsel has been unable to obtain an affidavit from Marbley which would provide an alibi for defendant and is informed and believes from his conversations with Carl [sic] McKay and Warren Mitchell that, if Marbley were compelled to appear, he would refuse to testify on Fifth Amendment grounds.

"15. Counsel feels that, to present any legitimate issues on appeal, a belated motion to correct errors should be filed alleging insufficiency of evidence and that the finding and decision is contrary to law, and error in that the State concealed or failed to present evidence which would have been beneficial to the accused, and inadequacy of defense counsel."

On the basis of that report the court overruled defendant's motion to discharge appellate counsel, granted leave to file a belated motion to correct errors,[1] and ordered counsel to proceed with an appeal.

The belated motion filed four days later alleged the following errors:

---

1. Post-Conviction Remedy Rule 2(A), Indiana Rules of Procedure, was amended December 17, 1973, effective January 1, 1974, but at the time this leave was granted (November 28, 1972) it read, so far as is here pertinent, as follows:

"1. The finding and decision of the court is contrary to law.

"2. The finding and decision of the court is not sustained by sufficient evidence.

"3. Defendant was denied a fair trial in that his court appointed counsel did not adequately prepare a defense and failed to adequately cross-examine the State's witness on the question of his identification of the defendant.

"4. Misconduct on the part of the prosecutor, in that the prosecutor failed to present and thereby concealed relevant evidence which would have been beneficial to the defendant, in that:

"(a) The State failed to call any of the investigating or arresting officers;

"(b) When the prosecuting witness started to testify as to pre-trial identification, the prosecutor stopped him and said, 'Let's not talk about that.'

"5. The court erred and violated defendant's constitutional rights in accepting the report of counsel and not ordering a further hearing and issuing process to compel the attendance of one Adell Marbley."

It was overruled the same day.

The State has not challenged the belated motion for failure to comply with Trial Rule 59(B) which requires that ". . . [t]he statement of claimed errors shall be specific rather than general, and shall be accompanied by a statement of the facts and grounds upon which the errors are based." The alleged errors argued in the appellant's brief have been responded to on their merits in the State's brief and oral

---

"(A) Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion for new trial, where:

"(1) no timely and adequate motion to correct error was filed for the defendant;

"(2) the failure to file a timely motion to correct error was not due to the fault of the defendant; and

"(3) the defendant has been diligent in requesting permission to file a belated motion to correct error under this rule.

"*   *   *

"If the trial court finds such grounds, it shall permit the defendant to file the motion, and the motion shall then be treated for all purposes as a motion to correct error filed within the prescribed period.

"*   *   *"

argument. Section I hereof states our reasons for denying relief pursuant to alleged errors 1, 2, 3 and 4, of the belated motion.

The argument made here in support of No. 5 of the belated motion is that *Ware* v. *State, supra,* (284 N.E.2d 543) requires the court to hold an evidentiary, adversary, hearing on defendant's *pro se* motion to discharge appellate counsel. We do not so read it.

In *Ware* we noted that a verified *pro se* motion for new trial, alleging, in essence, that appellant's court appointed counsel had failed to consult with him prior to trial, had been filed by appellant some eighteen days after he was sentenced; that "[n]either a denial of the allegations of the verified *pro se* motion nor any other response thereto appears at any place in the record." We also noted that when it was filed it was set for hearing, but the hearing was never held and the motion was never ruled on or otherwise disposed of. We then said:

> "Why there was never a hearing and ruling on that motion, the record does not disclose. But whatever may be the reason for that omission, it should be rectified. We therefore remand to give the trial court an opportunity to hear and rule on defendant's charges.
>
> "On remand new trial-level counsel should be appointed and he should be given adequate opportunity to amend or supplement the *pro se* motion after proper consultation with the defendant. The amended motion, together with supporting affidavits, should, of course, be properly served on the former trial counsel as well as the State and an opportunity given each to file counter affidavits and reply affidavits in conformity with Criminal Rule 17. *Whether additional evidence is received must be left to the sound discretion of the trial court.* If a new trial is granted the appeal will be dismissed." (Emphasis added.) (284 N.E.2d at 548.)

In the case at bar the trial court gave the defendant an evidentiary hearing on his *pro se* motion for new trial, since that was what his appellate counsel requested, instead of electing to amend or supplement the *pro se* motion with supporting affidavits. Trial counsel likewise apparently chose

to testify orally rather than to respond to the *pro se* motion by affidavit. But when it came to ruling on the second *pro se* motion which challenged the adequacy of the second attorney's *post conviction* representation, the trial court chose to follow, in substance, the alternative procedure of a written response as suggested in *Ware.*

Defendant's second *pro se* motion was not a motion for new trial; it prayed merely that his court-appointed appeal counsel be dismissed. The sworn response of that attorney furnishes an adequate basis for overruling the motion and for retaining the attorney as appellate counsel.

There was never an express ruling on defendant's *pro se* motion for new trial, but its grounds were repeated, amplified, and supplemented in the belated motion to correct errors which appellate counsel filed after his verified response to the second *pro se* motion was accepted. The belated motion obviously replaced and superseded both the trial public defender's motion to correct errors and the defendant's *pro se* motion for new trial. The belated motion, when overruled and brought here on appeal, became the defendant's assignment of errors in this court.

Although to have ordered a hearing on the *pro se* motion to dismiss counsel would have made possible the issuance of a subpoena for Adelle Marbley, that is insufficient reason for holding it was error not to do so. Virtually every relevant fact in the record commands the inference that a subpoena would have produced no testimony at all from Marbley's lips, much less that he would swear to anything helpful to defendant. He was in court at defendant's preliminary hearing, apparently without subpoena or invitation, yet the persistent efforts of two court appointed attorneys and defendant's girl friend were unavailing to induce him to even talk to anyone on the telephone after that. The conclusion is inescapable that he knew what defendant wanted from him and that he was determined not to give it.

The trial court committed no error and no abuse of dis-

cretion in the procedure followed in determining whether to sustain or overrule defendant's motion to discharge appellate counsel; nor did he err in overruling the motion. Neither did he err in overruling the belated motion to correct errors.

Appellate counsel has diligently and skillfully performed his duty in a highly professional manner. Both in his briefs and in his oral argument before us he has advanced every argument that could possibly be made for the defendant and has done so with such persuasive eloquence that we have given this case our closest scrutiny and our profoundest consideration, but we can find no error.

The judgment must be, and is therefore, affirmed.

Hoffman, C.J., and Buchanan, J., concur.

NOTE.—Reported at 315 N.E.2d 405.